**COMMONWEALTH of Pennsylanvia, Appellee**

v.

**Cecil Howard FOREMAN, Appellant.**

Superior Court of Pennsylvania.

Submitted July 23, 2012.

Filed Oct. 17, 2012.

James J. Walsh, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Sandra Preuhs, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BENDER, J., and WECHT, J.

OPINION BY STEVENS, P.J.

This is an appeal from the order entered in the Court of Common Pleas of Allegheny County denying Appellant's petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–46, follow-

ing an evidentiary hearing. Appellant contends he is entitled to relief under 42 Pa.C.S.A. § 9543(a)(2)(vi) on the basis of exculpatory after-discovered evidence, and therefore, the PCRA court erred in denying his PCRA petition. We affirm.

On direct appeal, this Court previously set forth, in relevant part, the following factual and procedural history:

The evidence adduced at Appellant's February 6, 2007 suppression hearing may be summarized as follows.[1] On April 11, 2006, Detective Kenneth Simon of the Narcotics Division of the Pittsburgh Police was working a drug suppression detail with other officers in the Zone 5 section of Pittsburgh. N.T. 2/6/07 at 4–5. At approximately 10:30 p.m., the three detectives were traveling in an unmarked car down Columbo Street, a residential neighborhood with no open businesses, bars, or clubs. *Id.* at 7–8. The Columbo Street neighborhood is a known drug-trafficking area where several shootings had recently occurred. *Id.*

As the officers drove down the street, Detective Simon observed seven or eight males standing around a car, one of whom was dressed all in red, including a red hat, red shirt, and red sweatpants. *Id.* at 6–7, 14, and 16–17. Based on his experience as a police officer, Detective Simon stated that red clothing indicated gang affiliation and that gang members 'carry guns and sell drugs.' *Id.* at 7. Detective Simon noticed that the individual wearing red clothing-later identified as Appellant-adjusted his waistband like he was carrying a gun. *Id.* at 6–7, 14, and 16–17.

According to Detective Simon, the detectives determined to speak with the

---

1. All of the evidence introduced at Appellant's suppression hearing derived from the testimony of [Detective Kenneth Simon], who was a witness produced by the Commonwealth.

men as a group and 'to see what they were doing, if they had any lawful reason to be hanging around that particular vehicle.' *Id.* at 8 and 18–19. As the detectives pulled within approximately 25 feet of the men, Appellant 'turned and looked at [the detectives'] car and he turned back around and kind of tucked like he was doing something with his waistband a second time.' *Id.* at 8 and 22.

When the detectives reached the area where the men were standing, Detective Simon and the other officers exited the vehicle. *Id.* at 9. Because he was not in uniform, Detective Simon produced his badge and announced, 'Pittsburgh Police' as he exited the vehicle. *Id.* at 8–9. In response to cross-examination by Appellant's counsel, Detective Simon testified that, after he exited the vehicle, he instructed the group of men to stop. *Id.* at 20. Detective Simon then made eye contact with Appellant and, as he approached the group, observed Appellant lean towards him, turn around, and reach for the waistband a third time. *Id.* at 9, 17, and 20. At this point, Detective Simon instructed Appellant to move his hands away from his waistband because he believed Appellant was reaching for a gun. *Id.* at 10. Appellant refused to move his hands as Detective Simon had instructed; therefore, Detective Simon pushed Appellant's hands away from the waistband. *Id.* at 10–11 and 21. Detective Simon then conducted a pat-down search of Appellant's sweatpants. *Id.* at 10. During this search, Detective Simon shook the waistband of Appellant's sweatpants and a gun fell to the ground. *Id.* The gun that fell from Appellant's waistband was cocked and ready to fire. *Id.* at 11 and 13. Detective Simon believed that Appellant may have cocked the gun during

one of the occasions on which he had reached for his waistband. *Id.* at 11.

As Detective Simon conducted his search of Appellant, a brief struggle occurred during which Detective Simon attempted to put his forearm into the back of Appellant's neck so as to push Appellant against a car and prevent him from retrieving the gun. *Id.* at 11. In an attempt to flee, Appellant punched another officer who confronted him as he spun away from Detective Simon. *Id.* at 11.

At Appellant's suppression hearing, Detective Simon, a 14–year veteran on the police force, testified that he had arrested numerous individuals with firearms in the Columbo Street neighborhood. *Id.* at 10. In his experience, Detective Simon testified that a waistband was 'the number one location that people put their guns in order to access them.' *Id.* at 9. Detective Simon also stated that, in a known drug-trafficking location, an individual reaching for a waistband 'poses the biggest threat to [him] as a narcotics officer.' *Id.* During the incident in question, Detective Simon believed that Appellant was reaching for a gun and that the safety of both he and his partners was in jeopardy. *Id.*

The trial court denied Appellant's motion to suppress at the conclusion of the hearing.

*Commonwealth v. Foreman,* 1353 WDA 2009, at 1–5 (Pa.Super. filed 6/21/10) (unpublished memorandum) (footnote in original) (footnote omitted).

Thereafter, Appellant's charges were severed with him proceeding to a jury trial regarding persons not to possess a firearm and to a non-jury stipulated trial on remaining charges, including carrying a firearm without a license. On April 30, 2008,

following a three-day trial, a jury[2] found Appellant guilty of persons not to possess a firearm, and on that same day, the trial court sentenced Appellant to five to ten years' imprisonment for this offense. Appellant filed timely post-sentence motions, which the trial court denied. On July 13, 2009, Appellant proceeded to non-jury stipulated trial[3] at the conclusion of which the trial judge convicted Appellant of carrying a firearm without a license, resisting arrest, and summary criminal mischief. On that same date, the trial court ordered Appellant to pay $150.00 in restitution and did not impose any additional penalty. Appellant filed a timely direct appeal to this Court.

On direct appeal, Appellant contended Detective Simon did not have reasonable suspicion to conduct a *Terry*[4] pat-down and, even if he did, his search exceeded the permissible bounds of a *Terry* pat-down when the detective shook Appellant's pants. Thus, Appellant contended the suppression court erred in denying his motion to suppress the physical evidence seized by Detective Simon. Finding no merit and/or waiver of Appellant's contentions, we affirmed his judgment of sentence. *See Foreman, supra.* Appellant filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on December 15, 2010.

On or about April 19, 2011, Appellant filed a timely *pro se* PCRA petition, counsel was appointed, and counsel filed an amended PCRA petition. In the amended petition, counsel averred Appellant was entitled to relief pursuant to 42 Pa.C.S.A. § 9543(a)(2)(vi) on the basis of exculpatory after-discovered evidence. Specifically,

counsel averred, in relevant part, the following:

On January 12, 2011, Detective Ken Simon was charged at CC No. 20110000392 with Perjury (two counts), Theft by Unlawful Taking–Movable Property, False Swearing in Official Matters (2 counts), Unsworn Falsification to Authorities (2 counts), Obstructing Administration of Law or Other Governmental Function (2 counts), Official Oppression—Arrest, Search, Etc. (2 counts). Detective Simon is currently scheduled to proceed to a jury trial on August 29, 2011, before the Honorable John A. Zottola. These charges arise out of allegations that, [in July of 2010], Detective Simon stated that he witnessed two individuals pass narcotics and cash between each other at a car wash, and that cash was recovered from one of the individuals involved. Upon reviewing the surveillance from the car wash it was determined that neither of the individuals were in close proximity to each other, and that in fact Detective Simon removed cash from one of the individual's vehicles, and placed it solely in Detective Simon's possession. This cash was never turned in as evidence. Both men were arrested for alleged violations of the law and charges were dismissed by the Allegheny County District Attorney's Office.

\* \* \*

Detective Simon was not charged with the aforementioned acts until ... over two years after the conclusion of [Appellant's] trial. Had the suppression court, and the jury know[n] that the only wit-

---

**2.** At the jury trial, the Commonwealth presented the testimony of Detective Simon, Detective Bradley Walker, and Detective Anthony Moreno. The defense presented the testimony of Antwon Wilson and Appellant.

**3.** The parties specifically agreed to rely upon the testimony presented at the jury trial.

**4.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

ness who testified would soon be prosecuted by the Allegheny County District Attorney's Office for fabricating probable cause, and mishandling of evidence, the suppression court or the jury would have either granted suppression of the evidence, or acquitted [Appellant]. In this particular case, [Appellant] was convicted largely based upon the testimony [of] Detective Ken Simon, an individual who is currently being prosecuted by the Allegheny County District Attorney's Office with eleven (11) counts, [as indicated *supra*]. Detective Simon is currently scheduled to proceed to a jury trial[.] These charges arise out of an incident that occurred on or about July 8, 2010. As [Appellant's] [jury] trial was conducted from April 28–30, [2008] (the stipulated non-jury trial was held on July 13, 2009) there was no possibility that the Defense (it is unclear when the District Attorney's Office or law enforcement became aware of these facts) knew about these charges against Detective Simon. . . . Further, as Detective Simon was the only individual who testified at the suppression hearing, evidence tending to show lack of credibility, and violation on proper evidence handling procedures, make it highly likely that the suppression court would have suppressed the evidence (namely the gun) in this case.

Appellant's Counseled Amended PCRA Petition filed 6/27/11 at 3–5.

The Commonwealth filed an answer to the amended PCRA petition, and following an evidentiary hearing,[5] the PCRA court denied Appellant's PCRA petition. Specifically, the PCRA court indicated the following:

1) This case fails to meet prong three of the [after-discovered evidence] test as a [petitioner] is not entitled to a new [trial] if this new evidence would be used solely to impeach the credibility of a witness, in this case, Detective Simon;

2) [T]he fact that Detective Simon has pending charges against him is not going to be outcome determinative in this case since many of the key points of Detective Simon's testimony at the suppression hearing and the trial are supported and corroborated by other testimony, including that of [Appellant] himself; and

3) [T]here is no nexus to the detective's [criminal charges] in 201[1] and this [incident] that occurred in 2006.

PCRA Court's Order filed 11/22/11 at 1.

This timely appeal followed and all Pa. R.A.P. 1925 requirements have been met.

■ Initially, we note that this Court's standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Reaves*, 592 Pa. 134, 923 A.2d 1119 (2007). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr*, 768 A.2d 1164 (Pa.Super.2001).

■ As indicated *supra*, Appellant's sole contention on appeal is that he is entitled to relief under 42 Pa.C.S.A. § 9543(a)(2)(vi) on the basis of exculpatory

---

**5.** We note that this Court has not been provided with the notes of testimony from the evidentiary hearing. However, assuming, *arguendo*, Appellant preserved his claims and presented at the hearing adequate evidence regarding the existence of Detective Simon's criminal charges, we conclude Appellant is not entitled to relief for the reasons discussed *infra*.

after-discovered evidence.[6] To be entitled to relief under the PCRA on this basis, the petitioner must plead and prove by a preponderance of the evidence "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). As our Supreme Court has summarized:

> To obtain relief based on after-discovered evidence, [an] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Pagan*, 597 Pa. 69, 106, 950 A.2d 270, 292 (2008) (citations omitted). "The test is conjunctive; the [appellant] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa.Super.2010) (citation omitted). Further, when reviewing the decision to grant or deny a new trial on the basis of after-discovered evidence, an appellate court is to determine whether the PCRA court committed an abuse of discretion or error of law that controlled the outcome of the case. *Commonwealth v. Reese*, 444 Pa.Super. 38, 663 A.2d 206 (1995).

■ After a careful review, we conclude Appellant's "new evidence" regarding the filing of criminal charges against Detective Simon in an unrelated matter does not meet the after-discovered evidence test since such evidence would be used solely to impeach the credibility of Detective Simon and would not likely result in a different verdict if a new trial were granted. *See Pagan, supra.* Specifically, regarding the third prong, related to impeachment evidence, Appellant admits that the primary purpose in presenting the evidence of Detective Simon's criminal charges would be to impeach the detective's credibility and "observational acumen." Appellant's Brief at 9. However, he further argues such evidence is relevant for "non-impeachment purposes" since it calls into question the "chain of custody" and "evidence handling procedures" regarding the confiscation of the handgun. Appellant's Brief at 9. Appellant notes that Detective Simon did not request the handgun recovered from Appellant's pants be tested for fingerprints, thus suggesting the handgun was actually never in Appellant's possession. Inasmuch as Detective Simon testified during Appellant's suppression hearing and trial that he removed the handgun from Appellant's pants, Appellant's argument regarding the lack of fingerprinting testing challenges Detective Simon's credibility. Thus, we conclude the sole reason Appellant is seeking to introduce evidence regarding Detective Simon's criminal charges is to impeach the testimony, which the detective gave during Appellant's proceedings. *Pagan, supra.*

Regarding the fourth prong, related to whether the new evidence would result in a different verdict if a new trial were granted, Appellant has failed to show any nexus between his case and Detective Simon's alleged misconduct in an incident, which occurred more than two years after

6. The Commonwealth did not file criminal charges against Detective Simon until January 12, 2011, and therefore, Appellant could not have presented this claim on direct appeal. Thus, he has not waived the claim under 42 Pa.C.S.A. § 9544. Additionally, the claim has not been previously litigated. *See id.*

Appellant's conviction. *See Common-wealth v. Soto*, 983 A.2d 212 (Pa.Super.2009). Additionally, Appellant admits in his appellate brief that, subsequent to the PCRA proceedings in this case, "Detective Simon was found not guilty of all of the charges filed against him." Appellant's Brief at 6. Thus, Appellant's assertion that Detective Simon committed misconduct in his case is pure conjecture and would not compel a different jury verdict. *See Soto, supra.*

For all of the foregoing reasons, we affirm.

Affirmed.

## WECHT, J., FILES A CONCURRING OPINION.

### CONCURRING OPINION BY WECHT, J.

I join the well-reasoned opinion of the learned majority. I write separately to express briefly my concerns regarding the standard we utilize to examine newly discovered evidence claims under the Post–Conviction Relief Act ("PCRA").[1]

As the majority correctly states, to be eligible for relief on a claim of after-discovered evidence, a PCRA petitioner must plead and prove by a preponderance of the evidence "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi). To evaluate such a claim:

> [an] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and

(4) would likely result in a different verdict if a new trial were granted.

*See,* Majority Op. at 537 (quoting *Commonwealth v. Pagan,* 597 Pa. 69, 950 A.2d 270, 292 (2008)).

My concern lies with the third prong of this test. In the case *sub judice,* there is no doubt that the proffered after-discovered evidence could be used only for impeachment purposes. Indeed, the evidence constitutes classic *crimen falsi* evidence, which can be admitted only for impeachment purposes. Thus, I take no issue with the majority's application of the test in this case. I agree that, as a matter of controlling law, Appellant is not entitled to relief.

Nevertheless, I believe we should apply the third prong with caution. To this end, I agree with Judge Klein's well-reasoned dissenting opinion in *Commonwealth v. Choice,* 830 A.2d 1005 (Pa.Super.2003). In *Choice,* Judge Klein noted that, in the typical case, after-discovered evidence that affected only credibility would not justify a new trial. Judge Klein opined that this was because evidence affecting credibility determinations generally will not be "of such nature and character that a different verdict will likely result if a new trial is granted." *Id.* at 1012 (Klein, J., dissenting). In other words, Judge Klein believed that most after-discovered evidence claims involving impeachment evidence could be disposed of merely by application of the final prong of the above-quoted test, because impeachment evidence, as such, seldom suffices to establish prejudice when evaluated in the totality of the trial record.

However, Judge Klein was unwilling to foreclose the possibility that impeachment evidence could be of such nature and quality that a new trial should result. Neither am I. As Judge Klein stated, "if the goal is

---

1. *See generally* 42 Pa.C.S. §§ 9541–46.

to find justice, there well may be circumstances where after-discovered evidence that goes only to attack credibility may justify a new trial." *Id.* The case we decide here today does not raise such concerns.

With all of this said, I am of course bound to apply the standard as elucidated by our Supreme Court. In this case, its application precludes relief.