J-S12038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DERRICK WHITE :
:
Appellant : No. 1883 EDA 2023

Appeal from the Order Entered June 22, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012991-2010

BEFORE:  DUBOW, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 14, 2024**

Appellant Derrick White appeals from the post-conviction court's order denying, as untimely, his third petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  The court concluded that Appellant failed to prove the newly-discovered-fact exception to the statutory time bar.  We affirm.

Appellant was convicted of, *inter alia*, homicide in the first degree, conspiracy to commit murder, and witness intimidation.  The victim, Abdul Taylor, had witnessed the murder of Allen Moment, Jr.  As set forth in our decision affirming Appellant's judgment of sentence on direct appeal, Taylor was hanging out with Nafeas Flamer (Nafeas) and Hakim Bond; Nafeas was waiting for Moment to return a gun.  The group heard gunshots from behind and fled.  Nafeas "later told [Taylor] it was a set-up, and indicated a desire to seek revenge" on Moment.  *Commonwealth v. White*, No. 1152 EDA 2015,

unpublished memorandum at 2 (Pa. Super. filed Feb. 5, 2016). Several days later, Taylor heard Nafeas making remarks indicating that he was going to kill Moment that same evening. Taylor refused to participate and left. Two days later, a man visited Taylor's house and told him that Nafeas and Bond were upset that Taylor did not want to be involved. That evening, Moment was shot and taken to a hospital, where he remained in critical care for over two years. Shortly before his death, Moment gave a statement that led to the arrests of Nafeas and Bond, along with Nafeas' uncle, Marvin Flamer (Marvin).

Appellant became involved following the arrests. Taylor informed family members that Nafeas and Marvin wanted him to give a false alibi for the night of Moment's shooting. Taylor then cooperated in the Moment investigation, after which "he acquired a reputation in the community as a 'snitch.'" *Id.* at 4. Authorities listened to Marvin's jailhouse recordings and heard a conversation from September 18, 2008, in which Marvin asked his mother, Geneva, "to find out what type of evidence the Commonwealth had against him. [Geneva] said they had 'the boy' listed as living at the address of [Taylor]'s girlfriend." *Id.* Marvin then asked his mother "if Appellant had 'gone up there' yet, and [Geneva] said no. [Marvin] then said, 'Man, they bullshittin'. Like everybody sayin' they gonna do something, they don't do it.'" *Id.* (quoting trial transcript). On May 6, 2010, Taylor was shot in the head and Appellant was arrested. He was interviewed by Detective James Pitts, and Appellant told Pitts that "he had killed [Taylor] in self-defense…." *Id.* at 5.

- 2 -

We denied Appellant's direct appeal on February 5, 2016, and our Supreme Court subsequently denied his request for further review on July 19, 2016. Appellant thereafter filed a timely PCRA petition, the denial of which we ultimately affirmed by order dated March 25, 2019. *Commonwealth v. White*, No. 4056 EDA 2017, unpublished memorandum (Pa. Super. filed Mar. 25, 2019). Appellant's petition included two claims which have some overlap with this litigation. First, Appellant argued that his attorney ineffectively failed to rebut inferences drawn by the Commonwealth regarding the September 18, 2008 phone call between Marvin and Geneva. The Commonwealth introduced the phone call as circumstantial evidence of the conspiracy between Marvin and Appellant, arguing that it showed Marvin wanted Appellant to confront Taylor. Appellant, in contrast, claimed that there was an innocent explanation for the conversation. Appellant cited "three lines in the recording[,] … claim[ing] that the conversation was actually about a newspaper's misprint of [Marvin]'s nephew's address…." *Id.* at 12. We rejected that claim, quoting additional portions of the phone call which showed "that [Marvin] was concerned about the evidence the prosecution had against him for killing Moment; that he wanted Appellant to 'go up there' and 'do something' about the case; and that when he learned that Appellant had not 'go[ne] up there yet,' he became upset…." *Id.* at 13-14.

Second, Appellant pursued an after-discovered-evidence claim based on allegations that Detective Pitts "had a prolonged pattern of coercing false statements from defendants and witnesses in other cases." *Id.* at 9. We

- 3 -

denied relief for two reasons. First, Appellant testified at trial, and the judge "instruct[ed] the jury to refrain from considering his statement to the police unless it first determined the statement was voluntary." *Id.* at 10. We noted that, "[u]nder these circumstances, had the detectives actually coerced him into giving a confession, he would have said so. Appellant, however, said the opposite." *Id.* Second, "evidence of Detective Pitts' conduct in other cases … would only have impeached his credibility without undermining belief in the voluntariness of Appellant's statement in the present case—a fact which, as discussed above, Appellant's own testimony establishes." *Id.* at 11.

Appellant, acting *pro se*, filed this PCRA petition, his third, on December 27, 2022.[1] Appellant included affidavits[2] from Fatih Anderson and Marvin. Anderson, who was an inmate at the same correctional facility as Appellant, wrote that while he was awaiting an evidentiary hearing, he spoke to another inmate, Dominick Booker, who introduced him to Nafeas. According to Anderson, Nafeas told him "that he never had any conversations with [Appellant] that led to the killing of Abdul Taylor as the Commonwealth alledgley [*sic*] insisted, and that the conversations the Commonwealth used

_____

[1] Appellant's second petition was dismissed as untimely, and we affirmed on appeal. *Commonwealth v. White*, No. 875 EDA 2022, unpublished memorandum (Pa. Super. filed Nov. 29, 2022).

[2] The documents were not sworn by oath before a judicial officer. "By definition, an affidavit is a statement of facts confirmed by oath before an officer having authority to administer the oath." *Commonwealth v. Chandler*, 477 A.2d 851, 853 (Pa. 1984). For ease of reference, we will refer to these documents as affidavits.

to convict [Appellant were] false and misleading." *Pro se* Petition, 12/27/22, Exhibit A at unnumbered 1. Marvin's affidavit addresses the September 18, 2008 phone call. Within, Marvin referenced a June 10, 2020 affidavit that he had authored for Appellant. Marvin learned that Appellant had failed to secure relief and wrote that he "would like to bring attention to the fact that I left a few things out, and wasn't asked about [*sic*]." *Id.*, Exhibit B at unnumbered 1. Marvin's affidavit relates that he was "simply speaking with my mother about a 'South Philly Review' article … and a mistake made with my nephew's address being listed as 1800 N. 29th street." *Id.* Marvin explained that when he asked if Appellant had "gone there yet," he was "simply asking did he go visit my nephew yet, not to any witness['] address." *Id.* Marvin wrote that his case "was wrongly tied" to Appellant "due to the Commonwealth['s] misleading and false theories." *Id.*

On January 26, 2023, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing, concluding that it was untimely and none of the exceptions was met. Addressing Marvin's affidavit, the PCRA court concluded that the affidavit "merely serves as a new source of previously alleged facts," Notice of Intent to Dismiss, 1/26/23, at 3, as Appellant had, in prior proceedings, "tr[ied] to argue that the September 18, 2008 prison call was about a misprint in a newspaper article" and Appellant could not "claim that the alleged fact was unknown" to him. *Id.* As to Fatih Anderson, the PCRA court concluded that Appellant failed to establish due diligence; additionally, the affidavit "is inadmissible hearsay evidence." *Id.*

Appellant filed a counseled response to the notice of intent to dismiss, which cited, for the first time, newly-discovered facts concerning Detective Pitts. Appellant claimed that, when he litigated his motion to suppress his statements to Detective Pitts, the Commonwealth violated its **Brady**[3] obligations by failing to disclose Internal Affairs complaints. Appellant said that, "[a]t the time, unbeknownst to [Appellant], Detective Pitts had had two sustained Internal Affairs complaints…." Reply to Notice, 5/17/23, at 4. Appellant argued that this constituted a "clear **Brady** violation…." **Id.** Appellant did not request permission to amend his petition.

The PCRA court then held a hearing on June 8, 2023. Regarding Detective Pitts, the PCRA court stated, "[Appellant] raised [that] previously. So why does he get another bite at it?" N.T., 6/8/23, at 5. Appellant replied, "Because there's been new disclosures about Detective Pitts. We now know he is going to be standing trial with three counts, including perjury, in the fall. We didn't know that before. It casts into doubt everything that he's done." **Id.** at 5-6. The Commonwealth replied, "I think the way [Appellant] is trying to phrase it, essentially, is that Pitts being criminally charged or indicted is the new fact … [and] I just want to make sure I'm clear on that[.]" **Id.** at 6. Appellant agreed, stating: "Yes, because it changes the circumstances, whereas [Appellant] was not credited or believed last time about Detective Pitts." **Id.**

---

[3] **Brady v. Maryland**, 373 U.S. 83 (1963).

The PCRA court took the matter under advisement, and subsequently concluded that the claim was waived because Appellant failed to request permission to amend his PCRA petition. The court then dismissed the petition on June 23, 2023, by joint order and opinion. Appellant filed a timely notice of appeal and complied with the order to file a Pa.R.A.P. 1925(b) statement. The PCRA court adopted its June 23, 2023 order and opinion in satisfaction of Rule 1925(a). Appellant raises the following claims for our review:

I. Did the PCRA court err in holding that Marvin Flamer's July 12, 2022 affidavit does not satisfy the newly-discovered[-]fact exception under 42 Pa.C.S. § 9545(b)(1)(ii)?

II. Did the PCRA court err in holding that Fatih Anderson's July 17, 2022 affidavit should be disregarded as hearsay and that its contents should have been discovered earlier in the exercise of due diligence?

III. Did the PCRA court err by not affording an evidentiary hearing on the timeliness issues and[,] thereafter, on [Appellant's] substantive claim?

IV. Did the PCRA court err in holding that [Appellant's] **Brady** claim with respect to Detective Pitts was waived for failure to make an explicit motion for leave to amend to include that claim?

V. Did the PCRA court err[] … by holding that Detective Pitts' criminal misconduct has no nexus to [Appellant's] case, that it is not material under **Brady**, and that the June 21, 2022 commencement of said criminal charges did not qualify as a newly-discovered fact for purposes of 42 Pa.C.S. § 9545(b)(1)(ii)?

Appellant's Brief at 2-3.

"The question of whether a petition is timely raises a question of law. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary." **Commonwealth v. Taylor**, 65 A.3d 462,

468 (Pa. Super. 2013) (citations omitted). Where, as here, a PCRA petition is filed more than one year after the judgment of sentence has become final, the petitioner must plead and prove the applicability of a statutory exception to the time-bar. **See** 42 Pa.C.S. § 9545(b)(1). Appellant solely relied upon the exception known as the newly-discovered-fact exception, which applies where "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii).

The argument in this case centers on the "no new source" rule, which flows from the plain language of the exception. "[A] witness' admission of evidence previously available to a petitioner cannot resurrect an untimely PCRA claim as such a result would clearly run contrary to the plain language of the exception that the *facts* upon which the claim is predicated were unknown to the petitioner…." **Commonwealth v. Johnson**, 863 A.2d 423, 427 (Pa. 2004) (quotation marks omitted; emphasis in original). The exception "focuses on newly discovered *facts*, not on a newly discovered or a newly willing source for previously known facts." **Id.** (emphasis in original).

Appellant's first claim largely addresses the PCRA court's conclusion that Marvin's affidavit constituted a new source of facts previously known to him. Appellant argues that the affidavit is a new fact because he only "knew for certain what the conversation was really about" after obtaining Marvin's affidavit. Appellant's Brief at 19. Because Appellant views the relevant fact

as Marvin's disclosure of his subjective beliefs, he turns his attention to whether he exercised due diligence in discovering that fact.

Appellant's view of how a court must construe the nature of the newly-discovered fact is contrary to caselaw. Our Supreme Court's decision in **Commonwealth v. Abu-Jamal**, 941 A.2d 1263 (Pa. 2008), offers a factually comparable application. In **Abu-Jamal**, the PCRA petitioner was convicted of murdering a police officer. The petitioner invoked the newly-discovered-fact exception based on an affidavit obtained on January 28, 2002, and signed by Yvette Williams. Her affidavit related that Cynthia White, a Commonwealth witness, told Williams that "she testified [Abu-Jamal] was the shooter because the police threatened her; she had not actually seen the shooting." **Id.** at 1265 (footnote omitted). This was not an entirely new claim, however, as Abu-Jamal had, in prior proceedings, sought to establish that the Commonwealth failed to disclose that it had promised White leniency in exchange for her testimony. **Id.** at 1269 n.12. The Court held that the affidavit could not satisfy the exception because the discovery of "yet another conduit for the same claim of perjury does not transform his latest source into evidence falling within the ambit of § 9545(b)(1)(ii)." **Id.** at 1269.

More recently, an *en banc* panel of this Court explained that the "no new source" rule forecloses newly-discovered facts that serve to "corroborate previously known facts or previously raised claims." **Commonwealth v. Maxwell**, 232 A.3d 739, 745 (Pa. Super. 2020) (*en banc*). The purported newly-discovered fact in that case was a revelation from Maxwell's brother in

2016, regarding a conversation that he overheard between the assistant district attorney and a police officer, with the prosecutor's stating that he "did not believe that any African-Americans would serve on the jury." *Id.* Notably, Maxwell had raised, during PCRA proceedings in 2000, a claim that his trial counsel ineffectively failed to object to the prosecutor's use of peremptory strikes in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).[4] We concluded that the affidavit was simply corroborative of theories he had already pursued, explaining that "[the] statement did not bring anything 'new' to [Maxwell]'s attention…. The **only** 'new' aspect of [Maxwell]'s claim was that a newly-willing testimonial source had come forward to corroborate a legal theory [Maxwell] raised decades before." *Maxwell*, 232 A.3d at 746 (citing *Abu-Jamal*, *supra* at 1267; emphasis in original).

These precedents establish that the PCRA court did not err in concluding that the Marvin affidavit does not satisfy the time-bar. As in *Abu-Jamal*, Appellant here is seeking to revive the same generic claim that he pursued in a prior proceeding. In that case, the generic claim was that the Commonwealth induced the witness to falsely testify. In Appellant's case, the generic claim is that Marvin's conversation with his mother had an innocent explanation. The PCRA court correctly determined that the affidavit is nothing more than a new source to corroborate that same factual predicate. That

---

[4] As *Batson* was issued after Maxwell's trial, we described "the substantive claim [Maxwell] seeks to raise before the PCRA court as a '*Batson* challenge' or '*Batson*-type challenge.'" *Maxwell*, *supra* at 741 n.2.

Appellant has a "newly-willing testimonial source … to corroborate a legal theory" he previously pursued is not sufficient to satisfy the Section 9545(b)(1)(ii) exception. **Maxwell**, **supra** at 746.[5]

Alternatively, the PCRA court's order may be affirmed on the basis that Appellant failed to prove that he was duly diligent in discovering the facts. **Commonwealth v. Williams**, 125 A.3d 425, 433 n.8 (Pa. Super. 2015) ("[A]s an appellate court, we may affirm on any legal basis supported by the certified record."). As the Commonwealth points out, Marvin's affidavit references an affidavit supplied by Marvin to Appellant in June of 2020. Appellant fails to explain why his due diligence obligations did not extend to simply asking Marvin to explain his perception of the phone call back then.[6]

_____

[5] Appellant asks this Court to find persuasive our unpublished memorandum decision in **Commonwealth v. Brown**, No. 2184 EDA 2017, unpublished memorandum (Pa. Super. filed May 11, 2018). We decline to address that case and whether it supports Appellant's position. Appellant is correct that unpublished cases may be cited for their persuasive value, but that applies only to decisions filed after May 1, 2019. Pa.R.A.P. 126(b)(1).

[6] In his reply brief, Appellant maintains that he "had no way of uncovering" the new details "unless and until Marvin … became willing." Appellant's Reply Brief at 4. Appellant claims that the affidavit "clearly states that there were facts [Marvin] held back at that earlier time…." **Id.** Appellant ignores, however, that Marvin's affidavit stated he "wasn't asked about" those details. **See supra** at 5. In context, the details that Marvin held back were due to Appellant's failure to ask further questions.

As a general proposition, we agree that assessing a petitioner's due diligence obligations is complicated when dealing with reluctant witnesses. In the somewhat analogous area of witness recantation testimony, we have recognized the inherent difficulty of compelling a witness to contradict their testimony. **See Commonwealth v. Medina**, 92 A.3d 1210, 1217 (Pa. Super.
*(Footnote Continued Next Page)*

"To qualify for an exception to the PCRA's time limitations under subsection 9545(b)(1)(ii), a petitioner need only establish that the facts upon which the claim is based were unknown to him and could not have been ascertained by the exercise of due diligence." ***Commonwealth v. Burton***, 158 A.3d 618, 629 (Pa. 2017). The due diligence inquiry "is fact-sensitive and dependent upon the circumstances presented." ***Commonwealth v. Shiloh***, 170 A.3d 553, 558 (Pa. Super. 2017) (quotation marks and citation omitted). Here, the relevant circumstance is that Marvin previously committed to assisting Appellant in pursuing collateral relief. Appellant fails to explain why he could not have uncovered the cited facts in June of 2020. Indeed, Appellant had every reason to ask Marvin about that phone call, since Appellant had previously complained of trial counsel's failure to supply context to the phone call during timely PCRA proceedings. Appellant fails to explain why it took a little over two years for him to uncover this "new" fact and, thus, he cannot establish his due diligence.

We readily dispose of Appellant's second claim, which concerns the affidavit from Fatih Anderson relaying statements made by Nafeas exculpating Appellant. ***Abu-Jamal***, ***supra***, forecloses this claim. In addition to the affidavit from Yvette Williams, Abu-Jamal presented an affidavit from Kenneth

---

2014) (concluding, for purposes of due diligence analysis, that "it was highly unlikely that defense counsel, without any supporting factual basis, could have compelled Hector Toro to change his testimony during cross-examination, by engaging in a fishing expedition as to why Hector Toro was lying"). This case does not pose these difficulties because Marvin was plainly willing to assist Appellant as of June of 2020, if not before.

Pate, who asserted that he had a phone conversation with Priscilla Durham, in which she admitted to Pate that she fabricated her trial testimony that Abu-Jamal admitted to murdering a police officer. "According to Pate, Durham said the police told her she was part of their 'brotherhood,' and she had to testify she heard [Abu-Jamal] say he killed the police officer." ***Abu-Jamal***, 941 A.2d at 1266. The Court held that this statement "does not meet [Section] 9545(b)(1)(ii)'s exception because a claim based on inadmissible hearsay does not implicate this exception." ***Id.*** at 1269 (citing ***Commonwealth v. Yarris***, 731 A.2d 581, 592 (Pa. 1999)). ***Accord Commonwealth v. Brown***, 141 A.3d 491, 501 (Pa. Super. 2016) (holding that an affidavit from a third party who was prepared to testify that a man named Tommy Lemon confessed to the murder did not constitute a newly-discovered fact; "The alleged confession by Tommy Lemon is hearsay as it is an out-of-court statement offered for the truth of the matter asserted."). Nafeas' statements are likewise offered for their truth and do not constitute newly-discovered facts.

Our disposition of the first two issues resolves Appellant's third claim, in which he argues that the PCRA court erred in failing to hold an evidentiary hearing regarding these two affidavits. Even if the fact-finder credited Marvin and Anderson's testimony, the newly-discovered-fact exception cannot be met for the reasons stated *supra*. Thus, the PCRA court correctly declined to hold an evidentiary hearing.

We address Appellant's remaining two claims together, as both involve Appellant's attempt to raise newly-discovered facts concerning former

- 13 -

Detective Pitts.[7]  While Appellant's initial response to the notice of intent to dismiss cited the internal affairs material as the relevant **Brady** material, Appellant now concedes that the relevant fact is the commencement of criminal charges against Pitts.  Those charges are docketed at CP-51-CR-4729-2022, and the trial is currently listed for July 8, 2024.  Appellant submits that these charges "resulted from a jurist's recognition of a *prima facie* case against him.  This should be held to constitute a newly discovered and material fact for purposes of overcoming the PCRA time bar…."  Appellant's Brief at 15-16.

Appellant does not explain how the Commonwealth could have disclosed during discovery a fact that did not yet exist.  To the extent that Appellant suggests that a judge's recognition of a *prima facie* case means that the Commonwealth knew, prior to Appellant's trial, that Pitts was untruthful about his interrogation tactics, we note that judicial decisions are not facts, **see generally Commonwealth v. Watts**, 23 A.3d 980, 981 (Pa. 2011), and Appellant fails to explain what particular facts the Commonwealth should have disclosed in discovery.  We therefore limit our analysis to the newly-discovered fact that the Commonwealth filed criminal charges against Pitts.

---

[7] Appellant's fourth claim challenges the PCRA court's failure to grant Appellant permission to amend his petition.  As we conclude that Appellant failed to meet an exception to the time-bar, any error in that regard is irrelevant.

This fact standing alone cannot serve to overcome the statutory bar.[8] Appellant does not point to any concrete fact revealed by the criminal proceedings that has any bearing on his case. Whatever Pitts did in cases involving other suspects cannot be *per se* imputed to this case. Appellant's claim is analogous to arguments that the death penalty is unconstitutional as-applied in any given case because of systemic flaws in the imposition of the death penalty. Our Supreme Court has held that a litigant cannot claim the death penalty is unconstitutional as-applied in a particular case based on such systemic faults. Instead, the litigant must show something specific to his or her case. The Supreme Court's analysis of an as-applied challenge to the

---

[8] As stated *supra*, in Appellant's first PCRA petition, he raised a claim that Pitts "had a prolonged pattern of coercing false statements from defendants and witnesses in other cases." **White**, No. 4056 EDA 2017, unpublished memorandum at 9. We concluded that such evidence would only impeach Pitts' testimony. This newly-discovered evidence claim arguably fails for the same reason as the Marvin affidavit: Appellant previously litigated a claim concerning Pitts' interrogation tactics and he cannot now rely on new sources to corroborate those facts.

However, numerous jurists have expressed discomfort with the notion that new evidence that would only serve to impeach can never warrant a new trial. **See Commonwealth v. Choice**, 830 A.2d 1005, 1012 (Pa. Super. 2003) (Klein, J., dissenting) ("[I]f the goal is to find justice, there well may be circumstances where after-discovered evidence that goes only to attack credibility may justify a new trial."); **Commonwealth v. Small**, 189 A.3d 961, 976 n.12 (Pa. 2018) (recognizing such criticisms). While the question here is one of jurisdiction as opposed to substantive merit, in these circumstances applying the "no new source" rule is effectively the same as applying the "no impeachment" rule. We therefore elect to dispose of the claim for other reasons.

death penalty in **Commonwealth v. Hairston**, 249 A.3d 1046 (Pa. 2021), illustrates that point:

> Hairston argues that the system is unconstitutional as-applied, complaining of the manner in which it has been imposed and implemented upon Pennsylvania's current death row prisoners. Importantly, however, he does not assert that he himself has been impacted or affected by the defects in Pennsylvania's capital punishment system identified in the [Joint State Government Commission (JSGC)] report. Although he asserts that the death penalty is arbitrarily imposed against people of low or impaired intellectual functioning, he does not argue that he is of low or impaired intellectual functioning. He does not assert that he is a victim of geographical bias; nor could he, as his crimes were committed in Allegheny County, where the JSGC report emphasized that prosecutors sharply limit the use of the death penalty.
>
> With regard to racial bias, Hairston does not contend that his conviction and death sentence resulted from racial bias against him or the race of the victim. Likewise, Hairston does not advance any argument that his conviction and sentence resulted from the lack of statewide-standardized process for funding, training and supervising defense counsel and/or because of discrepancies between private and public counsel. Nor does Hairston assert that his case resulted from an arbitrary exercise of prosecutorial power or from overly broad aggravating circumstances. To the contrary, he does not contend that at trial he was in any manner prevented from presenting evidence, including with respect to non-statutory mitigating circumstances.

**Id.** at 1061.

Similarly, even if we accept that the mere act of filing charges signals some sort of systemic flaw in how Pitts conducted interviews, it does not follow that Appellant himself was subjected to those tactics. We thus disagree that Appellant's purported newly-discovered fact at this juncture creates

jurisdiction to pursue a substantive claim.[9]  The fact is irrelevant and Appellant cannot establish jurisdiction.  The PCRA court did not err in dismissing the petition.[10]

Order affirmed.

---

[9] The Commonwealth and the PCRA court both alluded to the theoretical possibility that something could come out during those proceedings that would qualify as a valid newly-discovered fact.  At the hearing on this petition, the PCRA court asked how the charges were relevant, since Pitts is presumed innocent until proven guilty.  Appellant suggested that the court hold the petition in abeyance until the trial is completed, to which the PCRA court replied, "No, or I dismiss it and then you file a new one."  N.T., 6/8/23, at 8. The Commonwealth stated, "That would be a new fact, Your Honor, that would be the way to go."  *Id.*  Nothing in our decision addresses that possibility.  We conclude only that Appellant has failed to show that the commencement of criminal charges qualifies as a newly-discovered fact that lifts the time-bar.

[10] We are mindful of our Supreme Court's directive that the jurisdictional assessment does not involve any analysis of the merits of whatever claim would be pursued if jurisdiction is established.  Still, "that principle cannot go so far as to altogether preclude the courts from considering the claim the petitioner seeks to raise in determining whether an evidentiary hearing is warranted." **Commonwealth v. Robinson**, 185 A.3d 1055, 1061 (Pa. Super. 2018) (*en banc*).  Thus, in **Commonwealth v. Myers**, 303 A.3d 118, 123 (Pa. Super. 2023), we found no "causal connection" between the petitioner's discovery that the judge who accepted his plea was convicted of stealing cocaine from an evidence locker and a collateral challenge to that plea. Similarly, the fact that Pitts has been charged with perjury in an unrelated case has no causal connection to Appellant's case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/14/2024