J-S52023-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TIMOTHY DAVIS, | |
| Appellant | No. 2789 EDA 2013 |

Appeal from the PCRA Order entered August 29, 2013,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-1209481-1999

BEFORE:  GANTMAN, P.J., ALLEN and FITZGERALD*, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED AUGUST 20, 2014**

Timothy Davis ("Appellant") appeals *pro se* from the order denying his serial petition for post-conviction relief filed pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-46.  We affirm.

The PCRA court summarized the pertinent procedural history as follows:

> On June 9, 2000, a jury convicted [Appellant] of attempted murder (3 counts), aggravated assault (3 counts), possession of an instrument of crime (2 counts) and criminal conspiracy.  On October 4, 2000, this court sentenced [Appellant to] a total aggregate sentence of 35 -70 years [of imprisonment].
>
> [Subsequently, Appellant's direct appeal rights were reinstated *nunc pro tunc*.]  [Appellant] thereafter filed an appeal in the Superior Court, which affirmed his judgment of sentence on November 12, 2005.  [***Commonwealth v.***

_____

*Former Justice specially assigned to the Superior Court.

***Davis***, 890 A.2d 1096 (Pa. Super. 2005) (unpublished memorandum)]. On May 9, 2006, the Pennsylvania Supreme Court denied [Appellant's] Petition for Allowance of Appeal. [***Commonwealth v. Davis***, 898 A.2d 1069 (Pa. 2006)].

On June 26, 2006, [Appellant] filed a *pro se* PCRA petition – the first to deal with the merits of his case. [The PCRA court appointed counsel. PCRA counsel subsequently filed a brief pursuant to [***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*)], stating that the issues raised in [Appellant's] *pro se* petition were without merit and/or had been previously litigated. Counsel also concluded that there were no additional issues which could be raised in an amended PCRA petition. On March 20 2007, [after having previously issued Pa.R.Crim.P. 907 notice,] this court dismissed the petition without a hearing, holding that the petition had no merit. The court also permitted [PCRA counsel] to withdraw.

[Appellant] acting *pro se*, appealed this court's Order of dismissal. On February 7, 2008, the Superior Court dismissed the appeal because [Appellant] failed to file an appellate brief. ***Commonwealth v. Davis***, No. 1094 EDA 2007. [Appellant] then sought review in the Pennsylvania Supreme Court. On August 19, 2008, the Supreme Court denied the Petition for review. [***Commonwealth v. Davis***, 955 A.2d 349 (Pa. 2008)].

On May 14, 2010, [Appellant] filed his second *pro se* PCRA petition. On January 3, 2011, after consulting with counsel, [Appellant] withdrew his PCRA petition.

On August 20, 2012, [Appellant] filed the instant *pro se* PCRA petition. In his petition, [Appellant] claims that he is entitled to a new trial because of "after discovered" evidence. In support of this claim, [Appellant] attached to his petition an affidavit from Woodrow Lawson in which Lawson recants his trial testimony. [Appellant] argued that Lawson's recantation coupled with that of another witness, Shawn Price, warrant a new trial because the verdict would have been different had they testified consistently with their recantation at [Appellant's] trial.

On August 29, 2013, [after issuing Pa.R.Crim.P. 907 notice, and] after thoroughly reviewing the trial record and the pleadings and witness affidavits provided by [Appellant], this court dismissed the instant PCRA petition, holding the petition was untimely.

PCRA Court Opinion, 11/12/13, at 1-3 (footnotes omitted). This timely appeal followed. The PCRA court did not require Pa.R.A.P. 1925(b) compliance.

Appellant raises the following issues:

I. Did the [PCRA court] err in holding that the recantation evidence/testimony of Woodrow Lawson did not meet the timeliness exception as set forth under 42 Pa.C.S.A. § 9545(b)(1)(ii)(2) [sic]?

II. Do the interest[s] of justice require a remand for the purpose of not only taking Woodrow Lawson's testimony, but also to consider the previous recantation of Shawn Price?

Appellant's Brief at 4.

This Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Halley*, 870 A.2d 795, 799 n.2 (Pa. 2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001). Moreover, a PCRA court may decline to hold a hearing on the petition if the PCRA court determines that the petitioner's claim is patently frivolous and is without a trace of support in either the

- 3 -

record or from other evidence. *Commonwealth v. Jordan*, 772 A.2d 1011 (Pa. Super. 2001). Because this is a serial petition for post-conviction relief, Appellant must meet a more stringent standard. "A second or any subsequent post-conviction request for relief will not be entertained unless a strong prima facie showing is offered to demonstrate that a miscarriage of justice may have occurred." *Commonwealth v. Burkhardt*, 833 A.2d 233, 236 (Pa. Super. 2003) (*en banc*) (citations omitted). "A petitioner makes a prima facie showing if he demonstrates that either the proceedings which resulted in his conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or that he was innocent of the crimes for which he was charged." *Id.*

Our review of the record reveals that, although the PCRA court stated in its dismissal order that it was doing so because the petition was untimely, the PCRA court clearly considered and rejected Appellant's "after-discovered" evidence claim on its merits:

> [T]his court found that [Appellant's] after-discovered evidence claim satisfied the timely filing exceptions of §9545(b)(1)(ii). Thus, the court examined [Appellant's] after-discovered evidence claims on their respective merits and in light of the evidence as a whole.

PCRA Court Opinion, 11/12/13, at 5-6. Because the record supports the PCRA court's determination that Appellant had established an exception to the PCRA's time bar, we review the PCRA court's determination that Appellant's after-discovered evidence claim did not warrant post-conviction relief.

A petitioner is eligible for relief under the PCRA if he can establish the "unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). This Court has explained the test to be applied to such a claim as follows:

> To obtain relief based on after-discovered evidence, an appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable due diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

**Commonwealth v. Foreman**, 55 A.3d 532, 537 (Pa. Super. 2012) (citation omitted). "The test is conjunctive; the appellant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." **Id.** Moreover, "when reviewing the decision to grant or deny a new trial on the basis of after-discovered evidence, an appellate court is to determine whether the PCRA court committed an abuse of discretion or error of law that controlled the outcome of the case." **Id.**

Because recantation testimony "is notoriously unreliable, particularly where the witness claims to have committed perjury," PCRA courts are directed to "make credibility determinations on the recantation testimony with any eye to the relevant prejudice standard." **Commonwealth v.**

*Johnson*, 966 A.2d 523, 541 (Pa. 2009) (citation omitted)). Thus, when assessing credibility, the question is "whether the nature and quality of evidence is such that there is a reasonable probability that the jury would have credited it and rendered a more favorable verdict." *Johnson*, 966 A.2d at 542.

Woodrow Lawson's July 6, 2012, affidavit reads, in pertinent part, as follows:

> 5. My trial testimony was not a true account of what had transpired as far as [Appellant's] involvement.
>
> 6. I changed my testimony against [Appellant] because my Step-Son Jermaine was also shot and following the testimony I gave at the Preliminary Hearing I was put under a lot of pressure from my family to make sure everyone was convicted including [Appellant].
>
> 7. Prior to testifying against [Appellant] I was prepped and coerced by the trial prosecutor who told me that in order for him [sic][1] to make his [sic] case stick I needed to say that [Appellant] was also shooting a gun during the gun battle.
>
> 9. I am coming forward now with these statements in the sole effort of correcting a terrible mistake that was made on my behalf when I falsely implicated [Appellant] in the gun battle that led to me and my Step-Son being shot and injured. I feel terrible that I am, to a large degree, responsible for sending an innocent person to prison.
>
> ***
>
> My conscious is calling me to face reality. I use to abuse drugs. I am suffering nightmares because of this

_____

[1] At Appellant's trial, a female attorney represented the Commonwealth.

incident, and my desire for revenge. My angar [sic] and confusion allowed me to be influenced by the police and others to say [Appellant] had two guns. The fact is, I assumed he had been shooting. The truth is he never did any shooting. At the time the shots rang out, he had not pulled any weapons. I never saw [Appellant] do any shooting. In fact he looked shocked and actually moving away from the other two shooters. I realize now that my testifying that he had two guns was a desire to punish anyone that appeared to be part of the group. I regret what I have done.

PCRA Petition, 8/20/12, Exhibit A, Affidavit, 7/6/12, at 1-2.

Shawn Price's March 18, 2010, affidavit reads, in pertinent part, as follows:

Affiant swears that the District Attorney intimidated, and forced him to lie on the stand at trial or I would be sent back to jail for withholding evidence. I was also asked to point directly at [Appellant] and [was told] to say that Bruce Burdine shot at Myself [sic], and I would go home after I said and did what I was forced and threatened to do[.]

Affiant concludes his his [sic] affidavit by stating that I am now in the right state of mind, and I know that I've committed a wrong by lying for the District Attorney, [in order] for the D.A.'s office to get a conviction against Bruce Burdine and [Appellant].

PCRA Petition, 5/4/10, Exhibit A, Affidavit, 3/18/10, at 1-2.

After reviewing the recantation affidavits of both Mr. Lawson and Mr. Price, the PCRA court determined that Appellant did not meet his burden of establishing that their proposed testimony "would likely result in a different verdict if a new trial was granted." *Foreman*, 55 A.3d at 537. The PCRA court explained:

Here, the evidence and testimony present[ed] at [Appellant's] trial established beyond a reasonable doubt that, on November 24, 1998, [Appellant] and his cohorts, Bruce Burdine and Darnell Branch, were involved in a gun battle on the streets of Philadelphia during which [Appellant] and/or his accomplices shot three people ([Shawn] Price, Woodrow Lawson and four year-old [J]ermaine Lipscomb) and endangered numerous bystanders, including children. After the shooting, [Shawn] Price and Woodrow Lawson both gave police detectives a detailed description of the shooters[.] They also positively identified [Appellant] as one of the shooters after viewing more than 200 photos at police headquarters. On June 30, 1999, the police arrested Burdine. [Appellant], who was present when Burdine was taken into custody, escaped. He was apprehended two months later.

At trial, Lawson, [Shawn] Price and Rosalie Waring, who was standing across the street with several children when the shooting took place, all positively identified [Appellant] as one of the shooters. Based upon this evidence, the jury found both [Appellant] and Burdine guilty as charged.

Both Price and Lawson have "recanted" their testimony via affidavit. Even if these witnesses had testified at trial in a manner consistent with their recent recantations, it would not have affected the outcome of [Appellant's] trial. First, Rosalie Waring, who the jury found to be credible, positively identified [Appellant] as one of the shooters. She was standing across the street when the shooting occurred. Second, there was ample evidence suggesting [Appellant's] consciousness of guilt. [Appellant] managed to evade the police and remained at large even after his accomplices had been arrested. Third, both Price and Lawson gave detailed accounts of the shooting to police and [a] description of the shooter to police. Price and Lawson then picked out [Appellant's] photo from more than 200 shown to them by police at headquarters. Undoubtedly, the Commonwealth would have used Price's and Lawson's statements and circumstances surrounding the photo identification to impeach any inconsistent trial testimony. The credible evidence and testimony presented by the Commonwealth was overwhelming and clearly established [Appellant's] guilt beyond a reasonable doubt.

The proposed recantation testimony would not have compelled a different verdict.

Finally, it is important to note that this court, though not sitting as finder of fact during [Appellant's] jury trial, heard all of the evidence and testimony presented by the Commonwealth during [Appellant's] trial. The court had the opportunity to [] listen to the trial testimony of both Price and Lawson and observed their demeanor during the proceedings. The court also observed the jurors response to their testimony. Their testimony, in this court's opinion, was credible. It was also consistent with the statements they had provided to police detectives and with the testimony of the other Commonwealth witness(es).

Even if Price and Lawson had testified at trial consistent with their recantations, it is highly unlikely that any juror would have accepted that testimony as true given their prior positive and detailed statements to police and Rosalie Waring's persuasive trial testimony. Thus [Appellant] cannot meet the burden imposed by **Commonwealth v. Johnson**, 966 A.2d 523 (Pa. 2009) and **Commonwealth v. Abu-Jamal**, 553 Pa. 485, 517, 720 A.2d 79, 94 (1998).

PCRA Court Opinion, 11/12/13, at 6-7 (footnoted omitted).

Our review of the record supports the PCRA court's conclusion that Appellant has failed to meet the burden necessary to obtain post-conviction relief on an after-discovered evidence claim. **See e.g.**, **Commonwealth v. Abu-Jamal**, 720 A.2d 79, 104-05 (Pa. 1998) (rejecting the petitioner's claims that the proposed testimony of newly discovered witnesses established a basis for the grant of a new trial). Although not discussed by the PCRA court, Appellant has not adequately established how these proposed recantations would have done more than impeach their own, as well as Ms. Waring's, trial testimony. **See** Appellant's Brief at 17; **Foreman**, **supra**. Moreover, given the PCRA court's credibility determinations, it did

not err in failing to grant an evidentiary hearing prior to dismissing Appellant's PCRA petition. *See*, *e.g.*, *Commonwealth v. Bond*, 819 A.2d 33, 49 (Pa. 2002) (holding that PCRA petitioner's claim that his co-defendant recanted his statement implicating the petitioner in the victim's murder did not "warrant relief in the form of a hearing or a new trial"). Finally, we note that the jury convicted Appellant of criminal conspiracy. Thus, generally, Appellant, as a member of the conspiracy, is criminally responsible for the acts of his co-conspirators that were committed in furtherance of the conspiracy. *See generally*, *Commonwealth v. Galindes*, 786 A.2d 1004 (Pa. Super. 2001).

In sum, for all of the reasons stated above, the PCRA court did not err in dismissing Appellant's PCRA petition without a hearing, and we affirm its order denying post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2014

- 10 -