J-A21024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMIN GIBBS | : | |
| | : | |
| Appellant | : | No. 3426 EDA 2019 |

Appeal from the PCRA Order Entered November 12, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004779-2013,
CP-51-CR-0004781-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMIN GIBBS | : | |
| | : | |
| Appellant | : | No. 3427 EDA 2019 |

Appeal from the PCRA Order Entered November 12, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004779-2013,
CP-51-CR-0004781-2013

BEFORE:   KUNSELMAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    Filed: December 23, 2021

Appellant Amin Gibbs appeals from the order denying his timely first

Post Conviction Relief Act[1] (PCRA) petition without a hearing.   Appellant

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

contends that his trial counsel was ineffective for failing to challenge the discretionary aspects of his sentence, and for declining to introduce evidence that Appellant did not own a cell phone that linked him to the crime scene. Appellant also argues that he is entitled to relief based on after-discovered evidence relating to the misconduct of former Detective Philip Nordo. We affirm.

A previous panel of this Court summarized the facts and procedural history of this case as follows:

> On October 24, 2012, [Appellant] had an argument with Devoun Handy outside West Park Homes, a housing project located at 300 Busti Street in West Philadelphia. During the altercation, [Appellant] pulled out two firearms and began shooting at Handy. Handy fled, and escaped unharmed.
>
> \* \* \*
>
> Devoun Handy gave a statement to police in which he described the October 24, 2012, shooting. Handy stated he and [Appellant] "had words at 300 Busti Street. [Appellant] came back out of the building with two handguns and he told me to stop playing with him. I started backing up and he started shooting at me. I ran and he ran off." Anthony Wells also told the police he saw [Appellant] shoot at Handy on October 24, 2012. . . . [Subsequently,] several witnesses gave statements to the police indicating they were aware [Appellant] had attempted to shoot Handy . . . at 300 Busti Street.
>
> Other evidence corroborated the witnesses' statements. At around 5:10 p.m. on October 24, 2012, police received multiple reports of a shooting. [When the police arrested Appellant, they recovered a cell phone with the phone number (267) 290-0026 from the residence in which they arrested Appellant. N.T. Trial, 12/4/14, at 23; N.T. Trial, 12/5/14, at 82-83, 91. Police later obtained a warrant for cell phone records from T-Mobile and to forensically examine that phone's contents. N.T. Trial, 12/4/14, at 18-21.] The FBI's analysis of cell phone records placed [Appellant] near the location of the shooting on that date.

- 2 -

Further, [Appellant] sent several text messages shortly after the shooting indicating he was the perpetrator and he was hiding from the police. For instance, [Appellant] sent the following text messages to a contact listed as "Nye-Nye" the night of the shooting: "My name in the air. Heavy. Like on the tip. 5-0. No."; "He been asking for it. He begged for that. He lucky my s--t locked up on me."; "Last thing do the cops know my handle?" Nye-Nye also sent [Appellant] a text message stating: "UK . . . anything I hear and who is snitching, I got your back, cuz. Just be safe out there, please, and I love you." On October 28, 2012, [Appellant] sent the following text message: "They talking still, Nye-Nye?" Nye-Nye responded: "Nah, they not talking. I don't think the cops looks for you either. And Winky says call her."[2]

*Commonwealth v. Gibbs*, 1711 EDA 2016, 2018 WL 1516366, at *1, *4 (Pa. Super. filed Mar. 28, 2018) (unpublished mem.) (citations and footnote omitted).

In the early morning hours of November 17, 2012, another shooting incident occurred on Holden Street outside West Park Homes, where Handy was attending a party. While Handy was standing outside with several others, a Chevrolet Impala approached them and an individual in the passenger seat started firing a gun in their direction. One of the people in the group, Zykia Sanders, was fatally struck by a bullet. In statements to

---

[2] In several of the text messages sent from the cell phone with the number ending in 0026, the sender identifies himself as "Min." N.T. Trial, 12/5/14, at 107-08. Several witnesses testified that Appellant has the nickname "Min", also spelled "Meen". N.T. Trial, 12/2/14, at 160; N.T. Trial, 12/3/14, at 205, 216, 220; N.T. Trial, 12/4/14, at 135. Bruce Gibbs, a relative of Appellant's, voluntarily turned his cell phone over to the police for examination. The number (267) 290-0026 was saved in Bruce Gibbs's contacts under the nickname "Meen". N.T. Trial, 12/4/14, at 16-18. Bruce Gibbs did not testify because he had passed away prior to Appellant's trial. N.T. Trial, 12/3/14, at 252.

the police, witnesses identified [Appellant] as the shooter in both incidents.[3]

On November 23, 2012, police went to arrest [Appellant] at the home of his girlfriend, Rasheedah Malone. When Malone answered the door, the arresting officer heard [Appellant] run upstairs. The officer ordered [Appellant] to return downstairs. [Appellant] complied and was taken into custody. The police subsequently secured and executed a search warrant at the residence. They recovered from the second–floor front bedroom a .22–caliber revolver, a sawed-off shotgun, a black [cell phone] in a blue rubber case, and mail addressed to [Appellant]. [One of the officers involved in this search was now-former Detective Nordo.]

The Commonwealth charged [Appellant] with aggravated assault, persons not to possess firearms, carrying a firearm on a public street in Philadelphia, and related offenses in connection with the October 24, 2012, shooting (Docket No. 4781–2013); murder and related offenses in connection with the November 17, 2012, shooting (Docket No. 4782-2013); and persons not to possess firearms and prohibited offensive weapons with respect to the firearms recovered during the November 23, 2012, search of Malone's house (Docket No. 4779-2013). . . . Following a consolidated trial, a jury convicted [Appellant] at Docket No. 4781-2013 of aggravated assault, persons not to possess firearms, and carrying a firearm on a public street in Philadelphia. At Docket No. 4779-2013, the jury convicted [Appellant] of the separate charge of persons not to possess firearms. [Appellant]

_____

[3] At Appellant's trial, J.C. Buford, a witness to the shooting on November 17, 2012, recanted his statement to the police identifying Appellant as the shooter and testified that he did not see who the shooter was. N.T. Trial, 12/3/14, at 107, 114-21; *see also* Commonwealth's Ex. 9 (Buford's November 24, 2012 statement). Buford claimed that detectives questioned him continuously for about thirty-five hours. N.T. Trial, 12/3/14, at 130-32. Buford denied signing his name and writing the date and time on the last page of the statement. *Id.* at 133. According to Detective John Golphin, now-former Detective Philip Nordo took part in the questioning of Buford, and Nordo had spoken to Buford before Buford came to the Homicide Unit to give a statement. N.T. Trial, 12/5/14, at 35-38, 46; *see also* Commonwealth's Ex. 9 at 1. Nordo did not testify at Appellant's trial.

was acquitted of all other charges[, including all charges at Docket No. 4782-2013 arising out of the November 17, 2012, shooting].

On April 8, 2015, the trial court sentenced [Appellant] to an aggregate term of 17½ to 35 years' imprisonment. [Appellant] filed a timely post-sentence motion challenging the weight of the evidence. The motion was denied by operation of law on August 11, 2015. [Appellant did not file a direct appeal.] On February 5, 2016, [Appellant] filed a timely [PCRA] petition . . . requesting reinstatement of his direct appeal rights *nunc pro tunc*. The PCRA court reinstated [Appellant's] direct appeal rights on May 6, 2016.

*Id.* at *1-2 (footnote omitted).

Appellant filed a timely appeal and Appellant's counsel subsequently filed an **Anders**[4] brief discussing the sufficiency and weight of the evidence, the denial of Appellant's motion to suppress, and the discretionary aspects of Appellant's sentence. *Id.* at *1. This Court concluded that Appellant's discretionary sentencing claim was waived because he failed to raise that issue "at sentencing or in a timely filed post-sentence motion." *Id.* at *8. Appellant filed a response to counsel's **Anders** brief, raising several additional issues, including that the Commonwealth fabricated text messages associated with Appellant's cell phone number. *Id.* at *9. Ultimately, this Court concluded that Appellant's claim of fabricated evidence was meritless because it relied on a mischaracterization of the record, and Appellant did not present any evidence to support his allegation. *Id.* This Court affirmed the judgment of sentence on March 28, 2018, and granted Appellant's counsel leave to

---

[4] **Anders v. California**, 386 U.S. 738 (1967); **see also Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009).

withdraw. *Id.* Appellant did not file a petition for allowance of appeal with our Supreme Court.

On February 22, 2017, after his direct appeal rights were reinstated *nunc pro tunc* and while his direct appeal was still pending, Appellant filed a *pro se* first[5] PCRA petition. In his petition Appellant raised a general claim that the trial court committed an abuse of discretion; Appellant also specifically claimed that the trial court erred by improperly imposing consecutive sentences for aggravated assault and carrying a firearm on a public street in Philadelphia when the offenses arose from the same act, and that the trial court imposed illegal fines and costs without considering his ability to pay, among other issues. *Pro Se* PCRA Pet., 2/22/17, at 3, 53, 62-64 (renumbered). Appellant filed an amended *pro se* PCRA petition on August 8, 2017. On March 27, 2018, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss the petition which stated that Appellant's PCRA petition had been prematurely filed.

After this Court affirmed Appellant's judgment of sentence, the PCRA court appointed Valerie Palazzo, Esq., to represent Appellant for his PCRA proceedings. Appellant filed a motion to proceed *pro se* on May 21, 2018.

---

[5] A PCRA petition filed after the reinstatement of an appellant's direct appeal rights *nunc pro tunc* is considered a first PCRA petition for timeliness purposes. **See Commonwealth v. Turner**, 73 A.3d 1283, 1286 (Pa. Super. 2013) (explaining "when a PCRA petitioner's direct appeal rights are reinstated *nunc pro tunc* in his first PCRA petition, a subsequent PCRA petition will be considered a first PCRA petition for timeliness purposes" (citations and footnote omitted)).

The PCRA court conducted a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), on June 8, 2018, and granted Appellant's request to proceed *pro se*.[6]

Appellant then filed several amended *pro se* PCRA petitions. In the petition filed on September 20, 2018, Appellant asserted that his sentence was based on "evid[ence] that the Com[monwealth] knew or should have known as false[.]" Am. *Pro Se* PCRA Pet., 9/20/18, at 3. In the accompanying memorandum of law, Appellant raised, among others, a claim of ineffective assistance of trial counsel for not introducing evidence that Appellant was incarcerated at the time the cell phone with the number ending in 0026 was activated. *Pro Se* Mem. of Law in Supp. of PCRA, 9/20/18, at 5-6. Appellant also raised a claim of after-discovered evidence regarding former Detective Nordo's misconduct. **Id.** at 7-8.

The Commonwealth filed several answers to Appellant's amended PCRA petitions. On October 10, 2019, the PCRA court filed its Rule 907 notice of intent to dismiss the petition without a hearing. Appellant filed a timely response to the 907 notice. The PCRA court dismissed Appellant's PCRA petitions on November 12, 2019.

---

[6] The certified record does not contain a transcript of the June 8, 2018 **Grazier** hearing. However, the order permitting counsel to withdraw states "**Grazier** hearing held. [Appellant's] motion to proceed *pro se* is granted. Attorney Palazzo is withdrawn." Order, 6/8/18 (formatting altered). Because Appellant is not challenging the PCRA court's ruling in the **Grazier** hearing, the absence of the transcript does not impede our review.

Appellant then filed timely *pro se* notices of appeal at each of the trial court dockets.[7]  The PCRA court did not order Appellant to file a concise statement of issues pursuant to Pa.R.A.P. 1925(b).  The PCRA court filed an opinion pursuant to Rule 1925(a), addressing Appellant's claims that trial counsel was ineffective for failing to challenge the admissibility of cell phone records from T-Mobile and that trial counsel secretly undermined Appellant's case on behalf of the Commonwealth.  **See** PCRA Ct. Op., 5/19/20, at 3, 5-6. The PCRA court also addressed Appellant's claim of after-discovered evidence. **See id.** at 6-7.

Appellant subsequently filed an application with this Court requesting appointed counsel.  This Court remanded the matter to the PCRA court and on September 30, 2020, the PCRA court appointed Daniel A. Alvarez, Esq., to represent Appellant.[8]

Appellant raises three issues for our review:

1. Was trial counsel ineffective for failing to preserve the sentencing issue in a motion to reconsider sentence where the trial court abused discretionary aspects of sentencing, whereas it fashioned a sentence on three charges that were the statutory maximums and upward departures to the Sentencing Guidelines, and whereas they were entered consecutively to one another, creating an excessive aggregate sentence?

---

[7] Appellant complied with our Supreme Court's decision in **Walker** by filing separate notices of appeal under each trial court docket number.  **See Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018).  We consolidated these matters *sua sponte* on February 5, 2020.

[8] Attorney Alvarez filed an appellate brief on behalf of Appellant.

2. Was trial counsel ineffective for failing to introduce evidence that Appellant was in custody at the time the cell phone that was tied to him was activated?

3. Did the PCRA court err in dismissing Appellant's PCRA petition as Appellant proffers that had after-discovered evidence with regards to disgraced former homicide Detective Philip Nordo been made known to the jury it would have changed the trial's result?

Appellant's Brief at 6.

**Ineffective Assistance of Counsel - Sentencing**

In his first issue, Appellant argues that trial counsel was ineffective for failing to preserve a challenge to the discretionary aspects of his sentence. However, before we reach the merits of Appellant's claim, we must determine whether he has preserved it for review.

Here, the Commonwealth argues that Appellant waived this claim because he did not raise it before the PCRA court. Commonwealth's Brief at 11-12. The Commonwealth asserts that Appellant's "vague and disjointed references to an abuse of discretion and objections to his sentence do not create a specific claim that [trial] counsel was ineffective for failing to preserve a challenge to the discretionary aspects of his sentence." *Id.* at 12.

Appellant argues that he raised this issue with the PCRA court in his February 22, 2017, and September 20, 2018 *pro se* filings. Appellant's Brief at 27-28. Specifically, Appellant refers to his claims that (1) the trial court committed an abuse of discretion, *id.* (citing *Pro Se* PCRA Pet., 2/22/17, at 3); (2) the trial court imposed illegal fines, *id.* at 28 (citing *Pro Se* PCRA Pet., 2/22/17, at 62-64); (3) the trial court imposed consecutive sentences, *id.*

(citing *Pro Se* PCRA Pet., 2/22/17, at 53); and (4) the trial court entered "a sentence based on evid[ence] that the Com[monwealth] knew or should have known was false," ***id.*** (quoting Am. *Pro Se* PCRA Pet., 9/20/18, at 3 (quotation marks omitted)).

It is well settled that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); ***see also Commonwealth v. Roney***, 79 A.3d 595, 611 (Pa. 2013) (holding that a claim not raised in the PCRA court was waived on appeal). Further, our Supreme Court has explained that although "courts may liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon a litigant, and a court cannot be expected to become a litigant's counsel or find more in a written *pro se* submission than is fairly conveyed in the pleading." ***Commonwealth v. Blakeney***, 108 A.3d 739, 766 (Pa. 2014).

Our review of the record confirms that, although Appellant challenged aspects of his sentence and raised trial counsel's ineffectiveness in his *pro se* filings before the PCRA court, he did not specifically raise any claims relating to the discretionary aspects of his sentence.[9] However, even liberally

---

[9] Appellant raised claims in his *pro se* PCRA petition related to double jeopardy and merger, which assert that the trial court erred in imposing consecutive sentences for aggravated assault and carrying a firearm on a public street in Philadelphia because these convictions arose out of the same act, and the legislature did not intend to punish the same conduct twice, ***see*** *Pro Se* PCRA, 2/22/17, at 53 (renumbered). ***See Commonwealth v. Johnson***, 231 A.3d 807, 819 (Pa. 2020) (stating that "[t]he Double Jeopardy Clause protects a defendant in a criminal proceeding against multiple punishments . . . for the
*(Footnote Continued Next Page)*

construing Appellant's *pro se* pleadings, we cannot conclude that he preserved a claim that trial counsel was ineffective for failing to file a post-sentence motion challenging the discretionary aspects of Appellant's sentence. Therefore, because Appellant has raised this issue for the first time on appeal, it is waived.[10] ***See*** Pa.R.A.P. 302(a); ***Roney***, 79 A.3d at 611.

---

same offense" (citations and quotation marks omitted)); ***Commonwealth v. Baldwin***, 985 A.2d 830, 833 (Pa. 2009) (explaining that under 42 Pa.C.S. § 9765, offenses merge when they arise from a single criminal act and all of the elements of one of the offenses are included in the elements of the other). Merger is a challenge to the legality of the sentence and not to its discretionary aspects. ***See generally Baldwin***, 985 A.2d at 833 (stating that merger for sentencing purposes involves the legality of a sentence, and the standard and scope of review is *de novo* and plenary, respectively). The PCRA court did not address this claim in its Rule 1925(a) opinion. Although Appellant asserts merger claims in his *pro se* PCRA petition, he did not raise these issues on appeal; instead he claims that his trial counsel was ineffective for not challenging the discretionary aspects of his sentence. ***See*** Appellant's Brief at 17-29.

In any event, Appellant's merger claims are misplaced. Section 9765 "prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." ***Baldwin***, 985 A.2d at 833. Instantly, because these offenses do not have any elements in common, the offenses do not merge for sentencing purposes, even if they arose from a single criminal act. ***Compare*** 18 Pa.C.S. § 2702(a)(1) (defining aggravated assault), ***with*** 18 Pa.C.S. § 6108 (defining carrying a firearm on a public street in Philadelphia).

[10] As noted above, in his *pro se* PCRA petition, Appellant claimed that the trial court imposed an illegal sentence when it imposed fines and costs without considering his ability to pay. ***See*** *Pro Se* PCRA, 2/22/17, at 62-63 (renumbered). The PCRA court did not address this claim in its Rule 1925(a) opinion. Further, Appellant did not raise this claim on appeal; rather he argues that his trial counsel was ineffective for not challenging the discretionary aspects of his sentence. ***See*** Appellant's Brief at 17-29. A claim that a trial

*(Footnote Continued Next Page)*

- 11 -

**Ineffective Assistance of Counsel - Cell Phone Evidence**

In his second issue, Appellant argues that trial counsel was ineffective for failing to introduce evidence that the cell phone with the phone number (267) 290-0026 did not belong to Appellant. Appellant's Brief at 29-32. By way of background, Appellant notes that, at trial, the cell phone was used to establish that Appellant was in the vicinity of the October 24, 2012 shooting. *Id.* at 29. Appellant claims that phone records establish that the cell phone was first activated on June 26, 2010, at which point Appellant was incarcerated for another matter. *Id.* at 30. Appellant contends that this evidence would have shown that he did not own the cell phone that the Commonwealth used to place him at the scene of the October 24, 2012 shooting. *Id.* Appellant argues the benefits of introducing this evidence outweighed the potential prejudice of introducing evidence that Appellant had

---

court imposed a non-mandatory fine without considering the defendant's ability to pay that fine is a non-waivable challenge to the legality of the sentence, not to its discretionary aspects. *See generally Commonwealth v. Ford*, 217 A.3d 824, 827 (Pa. 2019). A challenge to the trial court's authority to impose costs also implicates the legality of the sentence. *See Commonwealth v. Lehman*, 201 A.3d 1279, 1283 (Pa. Super. 2019), *aff'd*, 243 A.3d 7 (Pa. 2020).

In any event, our review of the record demonstrates that although the trial court ordered Appellant to pay court costs, it did not impose any fines. Therefore, the trial court did not impose an illegal sentence when it assessed mandatory court costs without holding an ability-to-pay hearing. *See, e.g.*, *Ford*, 217 A.3d at 827 n.6; *Commonwealth v. Lopez*, 248 A.3d 589, 595-96 (Pa. Super. 2021) (*en banc*), *appeal granted*, 178 EAL 2021, 2021 WL 3732290 (Pa. filed Aug. 24, 2021) (*per curiam* order)

been previously incarcerated. *Id.* at 31-32. Therefore, Appellant contends

that trial counsel had no reasonable basis for his inaction. *Id.* Appellant also

claims that he was prejudiced by counsel's omission of this evidence in light

of several witnesses recanting their testimony that he was the shooter on

October 24, 2012.[11] *Id.*

> This Court has explained that

> our standard of review from the denial of a PCRA petition is limited
> to examining whether the PCRA court's determination is supported
> by the evidence of record and whether it is free of legal error. The
> PCRA court's credibility determinations, when supported by the
> record, are binding on this Court; however, we apply a *de novo*
> standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019)

(citations omitted and formatting altered).

> Furthermore, to establish a claim of ineffective assistance of
> counsel, a defendant must show, by a preponderance of the
> evidence, ineffective assistance of counsel which, in the
> circumstances of the particular case, so undermined the truth-
> determining process that no reliable adjudication of guilt or
> innocence could have taken place. The burden is on the defendant
> to prove all three of the following prongs: (1) the underlying claim
> is of arguable merit; (2) that counsel had no reasonable strategic
> basis for his or her action or inaction; and (3) but for the errors
> and omissions of counsel, there is a reasonable probability that
> the outcome of the proceedings would have been different.

> We have explained that a claim has arguable merit where the
> factual averments, if accurate, could establish cause for relief.

---

[11] Appellant does not identify these witnesses by name. Instead, he cites to portions of the notes of testimony where witnesses testified that the statements they gave to the police were not true. Appellant's Brief at 31 (citations omitted).

- 13 -

Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Id.* at 1043-44 (citations omitted and formatting altered).

Further, it is well settled that

[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Maddrey*, 205 A.3d 323, 328 (Pa. Super. 2019) (citations and quotation marks omitted), *appeal denied*, 218 A.3d 380 (Pa. 2019). Lastly, this Court "may affirm the decision of the [PCRA] court if there is any basis on the record to support the [PCRA] court's action; this is so even if we

rely on a different basis in our decision to affirm." ***Commonwealth v. Wiley***, 966 A.2d 1153, 1157 (Pa. Super. 2009) (citation omitted).

Here, the PCRA court did not specifically address this claim in its 1925(a) opinion.[12]  However, our review of the record confirms that Appellant has failed to establish that he was prejudiced by trial counsel's decision not to introduce evidence that Appellant was incarcerated at the time the subscriber activated the cell phone with the number ending in 0026.  As noted previously, the evidence presented to the jury showed that police recovered the cell phone from the residence where Appellant was arrested.  Further, text messages sent from that phone in October 2012 identified the sender as "Min," which is Appellant's nickname.  Appellant argues that his trial counsel should have presented additional evidence to show that the cell phone did not belong to him, *i.e.*, that Appellant was incarcerated at the time the phone was activated on June 26, 2010.  However, the jurors, as the finders of fact, could conclude circumstantially that Appellant possessed and used the phone in October 2012.  Therefore, on this record, Appellant cannot satisfy the prejudice prong of the ineffectiveness test, *i.e.*, a reasonable probability that the outcome of his trial would have been different if counsel had introduced the subject evidence.  ***See Sandusky***, 203 A.3d at 1044.  Accordingly, Appellant is not entitled to relief on this claim.  ***See id.*** (stating that the "failure to satisfy any

---

[12] The PCRA court discussed Appellant's claim that the cell phone data obtained from T-Mobile was not admissible and noted that this Court addressed this claim in Appellant's direct appeal.  ***See*** PCRA Ct. Op., 5/19/20, at 3, 5-6 (citing ***Gibbs***, 2018 WL 1516366).

prong of the ineffectiveness test requires rejection of th[at] claim"); *see also* *Wiley*, 966 A.2d at 1157 (stating that we may affirm the denial of Appellant's PCRA petition on any grounds).

**After-Discovered Evidence**

In his final issue, Appellant argues that the PCRA court erred in denying his claim of after-discovered evidence with respect to former Detective Nordo. Appellant's Brief at 32-35. Specifically, Appellant asserts that "Nordo was fired in 2017 and criminally charged for his criminal conduct related to witnesses, [] includ[ing] sexually assaulting male witnesses. Moreover, he has been accused of using coercive and abusive tactics toward witnesses." *Id.* at 33. Appellant contends that the PCRA court erred in concluding that Nordo was only tangentially involved in the investigation, given that Nordo took part in the questioning of and taking a statement from J.C. Buford, who testified that he was a witness to the November 17, 2012 shooting. *Id.* at 33-34. At trial, Buford testified that he did not voluntarily go the police station to give a statement and did not sign the written statement. *Id.* at 35. Appellant acknowledges that Buford was a witness to the November 17, 2012 shooting, and that Appellant was not convicted of any charges related to that shooting. *Id.* at 34-35. Appellant argues that, even so, evidence of Nordo's misconduct is still relevant because Buford's allegedly coerced statement "was still part of the totality of the evidence that was heard and considered by the jury and certainly was not favorable to the Appellant . . . ." *Id.* at 34.

In reviewing an after-discovered evidence claim, this Court has explained:

> To establish eligibility on the basis of after-discovered evidence, a petitioner must prove that (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict if a new trial were granted. In determining whether the evidence would compel a different verdict, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction.

*Sandusky*, 203 A.3d at 1060 (citations and quotation marks omitted).

The after-discovered evidence test "is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010) (citations omitted).

After-discovered evidence of an officer's prior misconduct may compel a new trial where that officer was the Commonwealth's only witness at the defendant's trial. *See, e.g.*, *Commonwealth v. Williams*, 215 A.3d 1019, 1026-28 (Pa. Super. 2019). However, this Court has held that the filing of criminal charges against a detective who testified at the defendant's suppression hearing and at trial does not meet the after-discovered evidence test where the defendant fails to show any nexus between his case and the detective's alleged misconduct in an incident that occurred after the defendant's trial. *Commonwealth v. Foreman*, 55 A.3d 532, 537-38 (Pa. Super. 2012).

Here the PCRA court addressed Appellant's after-discovered evidence claim as follows:

> [Appellant's] after-discovered evidence claim must fail as he is unable to prove that Nordo's misconduct is of such a nature that this information, if presented to the fact-finder, would have led to a different verdict. In support of this claim, [Appellant] argues that the trial court should not have permitted Officer Golphin to read into the record the interview of J.C. Buford because Nordo typed it. However, [Appellant's] claim is without merit because Nordo was only tangentially involved in the case. Nordo did not testify at trial nor was he a lead detective on the case. In fact, at trial, Nordo's name is only mentioned a handful of times: (1) when Officer Golphin read an interview conducted with witness J.C. Buford, Officer Golphin stated that he conducted the interview while Nordo typed; (2) [Detective] Nordo was mentioned again during Officer Krewer's testimony, where Officer Krewer indicated that he went to arrest [Appellant] at the girlfriend's house and that Nordo had provided him with the address; and (3) Detective Thorsten Lucke mentioned that Nordo was present at [Appellant's] house when police executed the search warrant; however, Detective Lucke testified that he searched and recovered all of the firearms himself and made no mention of any further involvement by Nordo. Based upon Nordo's limited involvement in the investigation and the fact that he did not even testify at trial, [Appellant] is unable to show that his [after-]discovered evidence regarding Nordo on the "do not call" list would have changed the outcome of his trial in any way. Therefore, this [c]ourt properly dismissed [Appellant's] claim as meritless.

PCRA Ct. Op. at 6-7.

Based on our review of the record, we find no error in the PCRA court's conclusions. *See Sandusky*, 203 A.3d at 1060. As noted by the PCRA court, it is unlikely that evidence relating to Nordo's misconduct would compel a different verdict if a new trial was granted, especially because Nordo did not testify at Appellant's trial. *See* PCRA Ct. Op. at 6; *compare Williams*, 215

A.3d at 1026-28. Further, Appellant did not present any evidence linking Nordo's misconduct to the questioning of Buford; therefore, Appellant cannot establish a nexus between Nordo's misconduct and Appellant's case. **See Foreman**, 55 A.3d at 537-38. Finally, as Appellant acknowledges, Buford was a witness to the shooting on November 17, 2012, and Appellant was acquitted of all charges related to that shooting. Therefore, Appellant cannot establish that evidence of Nordo's alleged misconduct would compel a different verdict at a new trial in the instant matter.[13] Accordingly, Appellant is not entitled to relief on this claim. **See Sandusky**, 203 A.3d at 1060; **Padillas**, 997 A.2d at 363.

For these reasons, we affirm the PCRA court's order denying Appellant's PCRA petition without a hearing. **See Maddrey**, 205 A.3d at 328.

Order affirmed.

---

[13] Appellant notes that Nordo was involved in Appellant's arrest and the subsequent search of his residence. Appellant's Brief at 34-35. However, Appellant has not argued that the evidence recovered during that search would have been suppressed if evidence of Nordo's misconduct had been presented. **See Commonwealth v. Beshore**, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*) (holding that "the failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119" (citation and formatting altered)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/23/21</u>