J-S09039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ESSITE LEE | : | |
| | : | |
| Appellant | : | No. 332 EDA 2021 |

Appeal from the PCRA Order Entered September 15, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0501421-2006

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MARCH 25, 2022**

Appellant, Essite Lee, appeals *pro se* from the September 15, 2017, order entered in the Court of Common Pleas of Philadelphia County, which dismissed Appellant's second petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, on the basis it was untimely filed.  After a careful review, we affirm.

Appellant was arrested in connection with the shooting deaths of R.G. and B.F.  Represented by counsel, he proceeded to a jury trial.  This Court previously summarized the evidence presented at the jury trial as follows:

> Appellant and R.G., who was known as "Muscles," sold drugs in the 1900 block of Ingersoll Street, Philadelphia.  N.T. Trial (Jury) Vol. 5, 6/22/07, at 210.  Other drug dealers worked in the vicinity, and all of them paid R.G. for the right to transact their business in that area.  Appellant was paying R.G. for the right to

_____

[*] Former Justice specially assigned to the Superior Court.

deal drugs along the 1900 block of Ingersoll Street, but just before the murder, started to refuse to share the profits of his drug enterprise. In the days leading up to the murder, R.G. and Appellant had several arguments, and R.G. told Appellant that he could no longer sell drugs in the area. *Id.* at 211; N.T. (Jury) Vol. 7, 6/26/07, at 15. On the night of November 24, 2004, R.G. and Appellant both sold drugs along the 1900 block of Ingersoll Street and then verbally fought after Appellant refused to give R.G. some of the proceeds of his drug sales from that evening. N.T. Trial (Jury) Vol. 7, 6/26/07, at 17-18.

After the exchange with R.G., Appellant left Ingersoll Street, retrieved a gun, and returned to the scene of the argument. By that time, R.G. was seated in the driver's seat of his car next to another drug dealer, B.F. Two eyewitnesses, Thomas Noble and Sean Timmons, who both knew Appellant, gave signed statements to police. Timmons's statement also was videotaped. They indicated that they observed Appellant shoot the two victims. B.F. managed to escape from the car as he was being shot, but he collapsed in the street shortly thereafter.

At trial, Noble repudiated the information that he gave to the police, and Timmons denied any memory of speaking with them, claiming that he was undergoing drug withdrawal at the time. Noble's police statement was read into evidence:

> [T]he night of the shooting, I was outside the house on Ingersoll Street, the only house with a porch, right across from where Muscles's car was parked. I went outside to talk to Muscles and then he came outside and I came out after he did and when I got outside, the car was started, Muscles was in the driver's seat and the young boy that got killed was in the passenger seat in the front. A couple minutes after Muscles came out and got into the car, I was coming out the door and I saw [Appellant] and [Lamar Osborne] walking past Muscles's car coming from 18th Street walking towards the Ridge. And then when [Appellant] walked past Muscles's car, [Appellant] turned and started shooting through the side window on the driver's seat. [Appellant] fired a lot of times, five or six and ran away. [Appellant] and [Osborne] then ran straight down Ingersoll Street towards Ridge Avenue.

N.T. Trial (Jury) Vol. 5, 6/22/07, at 211-12.

- 2 -

The Commonwealth established that Timmons related to police that Appellant and "Muscles had an argument over selling drugs on the block. [Appellant] told my cousin, Muscles, that he would be back. When [Appellant] came back, he walked up on the car and shot my cousin, Muscles, in the back. [B.F.] tried to get out of the car and run[; Appellant] shot him in the back." N.T. Trial (Jury) Vol. 6, 6/25/07, at 132. Timmons continued that after the shooting, "[Appellant] told me if I wanted any trouble. I told him no and I ran because he was still holding the gun in his hands." *Id.* Timmons's videotaped statement also was shown to the jury.

Rohine Poplar, who also knew Appellant, testified that he was in the vicinity of the shooting on the night of November 24, 2004, and after hearing the gunshots, proceeded to the scene of the crime. Poplar related that when he arrived, he encountered Noble. At trial, Poplar was asked, "Did Tommy Noble ever tell you he saw who did this [murder]?" N.T. Trial (Jury) Vol. 7, 6/26/07, at 12. Poplar responded, "[Noble] said-he said he seen, yeah, he said he seen [Appellant] run down the street, that's it, that's all I can go by." *Id.* The Commonwealth established R.G. was struck by ten bullets, and that one of the bullets penetrated his body, exited the other side, and struck B.F., killing him as well.

*Commonwealth v. Lee*, No. 1510 EDA 2009, at 1-4 (Pa.Super. filed 9/22/10) (unpublished memorandum).

On June 28, 2007, a jury found Appellant guilty of two counts of first-degree murder and one count of possession of an instrument of crime. The jury was deadlocked as to the imposition of the death penalty, and on July 17, 2007, the trial court imposed two consecutive terms of life imprisonment.

Appellant filed a timely notice of appeal from his judgment of sentence; however, the appeal was dismissed due to trial counsel's failure to file a brief. Appellant's direct appeal rights were then reinstated via a timely-filed PCRA petition.

On appeal, Appellant presented challenges to the weight and sufficiency of the evidence. He also contended the trial court erred in denying various motions *in limine*, denying trial counsel's objection to the prosecutor's opening statement, permitting detectives to read into evidence the statements of Noble and Timmons, overruling trial counsel's objections to the prosecutor's closing argument, and refusing to provide a jury charge on third-degree murder.

Finding Appellant was not entitled to relief on his claims, this Court affirmed his judgment of sentence on September 22, 2010. Appellant filed a petition for allowance of appeal, which our Supreme Court denied on February 24, 2011. Appellant did not file a petition for a writ of *certiorari* with the United States Supreme Court.

On March 3, 2011, Appellant filed a first, timely *pro se* PCRA petition, and the PCRA court appointed counsel, who filed an amended PCRA petition. The PCRA court issued notice of its intent to dismiss Appellant's PCRA petition without an evidentiary hearing under Pa.R.Crim.P. 907, and the PCRA court dismissed the petition on July 20, 2012.

Appellant filed a timely appeal contending the PCRA court erred in dismissing his PCRA petition without an evidentiary hearing. Specifically, Appellant sought a remand so that he could develop his claim that trial counsel was ineffective in failing to call the following witnesses at trial: Warren

Harding, Jamillah Butler, Walter Perry, Markisha Graham, and Basheen Farrison. PCRA Court Opinion, filed 1/10/13, at 5-6.

Finding Appellant's underlying ineffectiveness issue lacked arguable merit, this Court concluded the PCRA court properly dismissed Appellant's PCRA petition without an evidentiary hearing. Thus, on October 4, 2013, we affirmed the PCRA court's dismissal order. **See Commonwealth v. Lee**, No. 2129 EDA 2012 (Pa.Super. filed 10/4/13) (unpublished memorandum). Appellant filed a petition for allowance of appeal, which our Supreme Court denied on April 16, 2014. Appellant did not file a petition for a writ of *certiorari* with the United States Supreme Court.

On May 3, 2015,[1] Appellant filed a second *pro se* PCRA petition. Therein, Appellant acknowledged that the instant petition was untimely; however, he contended that he was entitled to the "newly-discovered facts" exception to the PCRA's time-bar.[2] **See** PCRA Petition, filed 5/4/15. In support of his contention, he attached to his PCRA petition two letters, which he marked as Exhibit A and Exhibit B.

---

[1] Although the *pro se* PCRA petition was time-stamped and docketed on May 4, 2015, we shall deem it to have been filed on May 3, 2015, when Appellant handed it to prison authorities. **See Commonwealth v. Jones**, 549 Pa. 58, 700 A.2d 423 (1997) (discussing the prisoner mailbox rule).

[2] There are three exceptions to the PCRA's time bar, one of which is the "newly-discovered facts" exception discussed *infra*. **See** 42 Pa.C.S.A. § 9545(b)(1)(i-iii).

Exhibit A is a letter that is dated April 14, 2015, and purports to be written by Dia Jiles. Exhibit B is a letter that is undated and purports to be written by Warren Harding. Appellant averred that, after the litigation of his first PCRA petition, he received the letters. *See id.* at 1.

On July 14, 2017, the PCRA court provided Appellant with notice of its intent to dismiss the petition without an evidentiary hearing under Pa.R.Crim.P. 907. On August 4, 2017, Appellant filed a *pro se* response arguing that the two letters, which he attached to his May 3, 2015, PCRA petition, entitled him to an evidentiary hearing. He contended the existence of the witnesses and the facts set forth in the letters met the "newly-discovered facts" exception under Subsection 9545(b)(1)(ii).

On September 15, 2017, the PCRA court dismissed Appellant's PCRA petition. On October 20, 2017,[3] Appellant filed a *pro se* notice of appeal.[4] On

_____

[3] We note there appears to have been a breakdown in the courts in that the Clerk of Courts sent Appellant's notice of appeal to this Court on February 19, 2021. Further, the PCRA court notes that it made corrective entries to the docket to reveal that, under the prisoner mailbox rule, Appellant filed his notice of appeal on October 20, 2017, which is the date of the postmark on the envelope in which Appellant mailed his notice of appeal. PCRA Court Opinion, filed 5/10/21, at 2 n.2. *See Jones*, *supra* (discussing the prisoner mailbox rule).

[4] Even in consideration of the prisoner mailbox rule as discussed *supra*, Appellant's notice of appeal is facially untimely. *See* Pa.R.A.P. 903(a) (indicating a notice of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken). However, this defect does not deprive us of jurisdiction because there is no indication on the PCRA court docket that it notified Appellant of the September 15, 2017, dismissal order. *(Footnote Continued Next Page)*

- 6 -

J-S09039-22

November 14, 2017, the PCRA court directed Appellant to file a Pa.R.A.P. 1925(b) statement, and on or about January 9, 2018, Appellant filed a Rule 1925(b) statement.[5] On May 10, 2021, the PCRA court filed a Rule 1925(a) opinion.

Appellant sets forth the following issue in his "Statement of the Question Involved" (verbatim):

> 1. Is the Defendant entitled to a remand to the PCRA court for full evidentiary hearing where the Defendant properly pled and would have been able to prove that he was entitled to relief under the PCRA but where the PCRA court erred in denying that PCRA petition as untimely without a hearing?

---

*See* Pa.R.A.P. 108(a)(1) (indicating the appeal period begins to run on the date the Clerk of Courts "mails or delivers copies of the order to the parties"); Pa.R.Crim.P. 114(C)(2)(c) (indicating the docket entries shall contain the date of service of the order or court notice); Pa.R.Crim.P. 907(4); ***Commonwealth v. Jerman***, 762 A.2d 366, 368 (Pa.Super. 2000) (finding breakdown in PCRA court and deeming petitioner's appeal timely where Clerk of Courts failed to notify petitioner of order denying collateral relief).

[5] We note the docket entries reveal the PCRA court directed Appellant to file a Rule 1925(b) statement within 21 days of November 14, 2017. However, Appellant filed his *pro se* Rule 1925(b) statement on or about January 9, 2018. Generally, such an untimely filing would result in waiver of all issues on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues…not raised in accordance with the provisions of this paragraph (b)(4) are waived."). However, before we find waiver for non-compliance with a Rule 1925(b) order, we must confirm the Clerk of Courts has complied with the docketing requirements of Pa.R.Crim.P 114(C)(2)(c). ***Commonwealth v. Hess***, 570 Pa. 610, 810 A.2d 1249, 1254 (2002) (holding where docket sheet did not indicate the date of service of Rule 1925(b) order, Pennsylvania Supreme Court was "unable to ascertain the date upon which [the a]ppellant was purportedly served with the trial court's 1925(b) order and, therefore, simply cannot conclude when, if ever, the [filing] period under Rule 1925(b) began to run").
In the case *sub judice*, there is no notation on the PCRA court docket regarding service of the Rule 1925(b) order upon Appellant. Thus, we decline to find waiver on this basis. ***See Hess***, ***supra***.

- 7 -

Appellant's Brief at V (unnecessary capitalization omitted) (suggested answer omitted).

Initially, we note the following:

> On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review.

*Commonwealth v. Nero*, 58 A.3d 802, 805 (Pa.Super. 2012) (quotation marks and quotations omitted).

> Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. The most recent amendments to the PCRA, effective January 16, 1996, provide a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

*Commonwealth v. Monaco*, 996 A.2d 1076, 1079 (Pa.Super. 2010) (citations omitted).

> [There are] three statutory exceptions to the timeliness provisions in the PCRA [that] allow for the very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petitioner must allege and prove:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

*Id.* at 1079-80 (citing 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii)).

Any petition invoking a timeliness exception must be filed within sixty days of the date the claim could have been presented.[6] 42 Pa.C.S.A. § 9545(b)(2).  "We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." ***Commonwealth v. Marshall***, 596 Pa. 587, 947 A.2d 714, 719 (2008) (citation omitted).

Here, Appellant was sentenced on July 17, 2007, and this Court affirmed his judgment of sentence on September 22, 2010.  The Pennsylvania Supreme

---

[6] 42 Pa.C.S.A. § 9545(b)(2) has been amended to provide that a petition invoking a timeliness exception is required to be filed within one year of the date the claim could first have been presented. Specifically, effective December 24, 2018, the legislature amended Subsection 9545(b)(2) to read: "Any petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented."  **See** 42 Pa.C.S.A. § 9545(b)(2) (effective December 24, 2018). The amendment to Subsection 9545(b)(2) only applies to "claims arising on [December] 24, 2017, or thereafter."  **See id.**, cmt.  In the case *sub judice*, Appellant filed the instant PCRA petition, to which he attached his letters, on May 3, 2015, well before the effective date of the amended version of Subsection 9545(b)(2). In any event, assuming, *arguendo*, Appellant met the initial threshold under Subsection 9545(b)(2), we conclude Appellant did not otherwise meet the requirements of a timeliness exception as discussed *infra*.

Court denied Appellant's petition for allowance of appeal on February 24, 2011, and Appellant did not file a petition for a writ of *certiorari* with the United States Supreme Court.

Accordingly, Appellant's judgment of sentence became final 90 days later, on May 25, 2011. ***See*** U.S. Supreme Court Rule 13 (effective January 1, 1990) (stating that a petition for writ of *certiorari* to review a judgment of sentence is deemed timely when it is filed within 90 days). Appellant filed the instant PCRA petition on May 3, 2015, and consequently, it is facially untimely.

However, this does not end our inquiry as Appellant attempts to invoke the "newly-discovered facts" exception set forth in Subsection 9545(b)(1)(ii).

> To establish the newly discovered fact timeliness exception in [Sub]section 9545(b)(1)(ii), a petitioner must demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa.Super. 2015) (citations and quotation marks omitted).

"The test is conjunctive; the appellant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." ***Commonwealth v. Foreman***, 55 A.3d 532, 537 (Pa. Super. 2012) (citation omitted). Accordingly, we must determine whether

- 10 -

Appellant has established both that "there were facts unknown to him and that he exercised due diligence in discovering those facts." ***Brown***, 111 A.3d at 176.

Appellant's "newly-discovered facts" claim relates to two letters, which he attached to his PCRA petition as Exhibit A and Exhibit B. The PCRA court aptly summarized the letters as follows:

> [Exhibit A] is dated April 14, 2015[,] and signed "Dia...Jules or Jiles," along with another unreadable signature. The writer of Exhibit A states that he and friends heard shots and rushed to the scene where they saw the bodies of the shooting victims, "Little B" and "Muscles". After a crowd gathered, Jiles recounts that "[Appellant] walked upon the scene a little after and asked, 'What happened?'" Jiles responded "that Lil B and Muscles just got shot." [Appellant] said "damn that young bull just came home on a pass and got shot." According to Jiles, [Appellant] had approached from 19th and Masters Streets.
>
> Exhibit B is undated and signed by Warren Harding, who wrote that on November 24, 2007, he and others were detained in a police vehicle in an unrelated incident when he heard a police radio call of a shooting at 19th and Ingersoll. The police [officer], who had [d]etained Harding, released him in order to respond to the call. About a half an hour later[,] Harding received a call from "Jerz" or "J" who told Harding that he had just shot Muscles. "Jerz" came to Harding's house the next day...and told Harding he shot Muscles [R.G.] and Lil B [B.F.] while they were in Muscles' car because Muscles was a rat and was going to testify the next day against "Kyle." "Jerz" told Harding that he threw the gun he used into the Schuylkill River.
>
> Harding wrote that he did not know [Appellant] previously or that [Appellant] had been convicted of murdering Muscles until some unspecified time later when he encountered [Appellant's] sister. Harding told [Appellant's] sister that he knew that [Appellant] was innocent because of Jerz' confession.

PCRA Court Opinion, filed 5/10/21, at 4-5.

Regarding Exhibit A, which is the letter from Jiles, Appellant asserts Jiles is a "new" witness who contacted his family on April 14, 2015, to report what he observed on the night of the shooting. Appellant's Brief at 1. Specifically, Appellant contends Jiles's letter indicates he would testify that Appellant arrived at the scene after the shooting and made comments suggesting he was surprised by the shooting.

Our review of Jiles's letter reveals that, as early as the night of the shooting, Appellant was aware or should have been aware of Jiles's existence since Appellant allegedly spoke to him. Appellant has not explained why he did not provide Jiles's identity to his trial counsel, or, if Jiles's identity was unknown to Appellant, what steps, if any, he took to determine his identity.

Further, inasmuch as Jiles's letter recounts Appellant's alleged acts and statement, Appellant has failed to demonstrate "he did not know the facts upon which he based his petition." *Brown*, 111 A.3d at 176. Simply put, as it applies to Jiles's letter, Appellant has failed to demonstrate "there were facts unknown to him and that he exercised due diligence in discovering those facts." *Brown*, 111 A.3d at 176.

Regarding Exhibit B, which is the undated letter from Warren Harding, we note Appellant alleged in his first PCRA petition that trial counsel was ineffective in failing to call Warren Harding to testify at trial. Accordingly, we conclude Appellant has failed to demonstrate Harding is a previously unknown "new" witness as Appellant avers on appeal.

Moreover, in support of his ineffectiveness claim in his first PCRA petition, Appellant attached to his first PCRA petition a summary of the evidence to which Mr. Harding would have been willing to testify. Specifically, he averred:

> [Warren Harding is the] [b]est friend of the actual murderer….[He] [would] testify that on the day and time of the shooting he received a phone call from a friend named Jerz, who inform[ed] him that he had just shoot [*sic*] the deceased and his friend and that he had disposed of the murder weapon in the river[.] [T]his witness has provided a sworn affidavit to such and is willing to testify.

PCRA Petition, filed 3/3/11, exhibit. Appellant also attached to his first PCRA petition a letter from Mr. Harding dated August 20, 2008.

The summary of evidence and letter from Mr. Harding, both of which were attached as exhibits to Appellant's first PCRA petition, are substantially similar to the information contained in Mr. Harding's letter, which was attached as Exhibit B to Appellant's present PCRA petition. Accordingly, Appellant has failed to "demonstrate he did not know the facts upon which he based his [instant PCRA] petition and could not have learned those facts earlier by the exercise of due diligence." **Brown**, 111 A.3d at 176. Thus, Appellant has failed to plead and prove he is entitled to the "newly-discovered facts" timeliness exception on this basis.

Finally, as it pertains to Appellant's claim the PCRA court erred in denying his petition without an evidentiary hearing, we note "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA

court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa.Super. 2008). In the case *sub judice*, the PCRA court properly concluded there was no genuine issue of material fact regarding the untimeliness of Appellant's petition, and the PCRA court did not otherwise abuse its discretion in failing to hold a hearing.

For all of the foregoing reasons, we agree with the PCRA court that Appellant's second PCRA petition is untimely. Thus, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/25/2022

- 14 -